**BOARD OF EDUCATION OF DOWN-ERS GROVE GRADE SCHOOL DISTRICT NO. 58, Plaintiff–Appellee,**

v.

**STEVEN L. and Christine L., individually and as parents of Andrew L., a minor, Defendants–Appellants.**

No. 95–3280.

United States Court of Appeals, Seventh Circuit.

Argued April 19, 1996.

Decided July 16, 1996.

· Daniel Edward Cannon, Kusper & Raucci, Chicago, IL, Leo J. Athas (argued), Maragos, Athas, Apostol, Ditore & Kowal, Chicago, IL, for Plaintiff-Appellee.

Allen E. Shoenberger (argued), Loyola University School of Law, Chicago, IL, Margo L. Hablutzel, Hablutzel & Associates, Chicago, IL, for Defendants-Appellants.

Before FLAUM, EASTERBROOK, and MANION, Circuit Judges.

MANION, Circuit Judge.

Nearly six years ago officials in a suburban Chicago school district concluded that Andrew L., then in third grade, was partially learning disabled. As a result Andrew received special education services including supervised reading. Three and one-half years ago, when Andrew was in fifth grade, the school district attempted to decrease the amount of time his reading was supervised. Andrew's parents challenged this attempt. This challenge made its way through two hearing examiners, who sided with the parents, to a federal district court, pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. The district court reversed the hearing examiners and agreed with the school district that a modified education plan met Andrew's educational needs. His parents appeal the district court's decision. Andrew is now a teen-

ager who will enroll in high school in a few months. If this case was not moot when considered by the district court, it is now. Thus, we vacate the district court's order and remand the case for dismissal on that ground.

## I.

In 1990 educational officials determined that Andrew L., then in third grade, suffered from certain learning disabilities. An initial evaluation concluded that he should not be placed in a special education program. Andrew's parents then obtained a private evaluation at which psychologists found him to be "of above average intelligence" and "very bright," but also that he likely suffered from an attention deficit disorder. A psychiatrist confirmed this diagnosis and prescribed Ritalin. A second conference was held at which school officials decided Andrew should receive certain special education services after all. Officials developed an Individual Education Plan ("IEP") for Andrew which they reviewed and modified annually, each time decreasing the amount of time a learning disabilities teacher spent directly with Andrew.

At an annual review of Andrew's IEP in November 1992, the Board of Education of Downers Grove ("the school district") proposed a modification. The plan then in effect provided for 225 minutes per week of direct supervision by a learning disabilities teacher in reading, writing, and organizational development and one class per week with the regular reading teacher. The modified IEP would place Andrew in the regular reading classroom five days per week and provide 150 minutes per week of direct supervision from the learning disabilities teacher in writing and organizational development, plus 30 minutes of consultation per week with the same reading teacher.

Andrew's academic progress was the catalyst for the proposed modification. He was reading at above a fifth grade level in fifth grade and received mostly A's with a few B's on his fourth grade, fourth quarter report card. Before requesting this modification, the school staff considered test results from Andrew's special education teacher, group

test results for students at Andrew's grade level, and various evaluations completed as part of the annual review of Andrew's IEP. Although the modified IEP would transfer Andrew to a regular reading class, it proposed no modification for other areas in which Andrew received special education services. The proposed modification would actually increase Andrew's reading time as well as the amount of collaboration between his regular and learning disability reading teachers.

Andrew's parents objected to any change in his IEP. They feared he would fall behind in reading and did not believe he was progressing satisfactorily in spelling and writing. They also asserted that Andrew's mainstream teachers were not properly trained to apply the IEP and requested that an outside consultant be retained to train Andrew's mainstream teachers. Andrew's parents requested a Level I due process hearing on the modification, as provided for by the IDEA. The Level I hearing officer heard from numerous witnesses and in April 1993 issued a report in favor of Andrew's parents and ordered that the earlier IEP remain in place.

The school district requested review of this decision. A Level II due process hearing was convened. That hearing officer also considered testimony and rendered his decision. He ordered that the current IEP remain in effect until a future IEP could be developed and approved by the parties, and that the modified IEP was null and void. In November 1993 the school district sued Andrew's parents under the IDEA, in effect appealing the decision of the Level II hearing officer that the modified IEP did not meet Andrew's fifth grade education needs. The school district contended that the hearing officer misapplied the proper legal standards under the IDEA. By this time Andrew was in the sixth grade.

The district court posed the issue as whether the school district "must provide direct special education instruction in reading to a child with learning disabilities who is receiving consultative services to enhance his regular education reading curriculum, who is performing at grade level in reading, and

who is receiving direct special education in other areas." *Bd. of Educ. of Downers Grove Grade School Dist. No. 58 v. Steven L. and Christine L. ex rel. Andrew L.,* 898 F.Supp. 1252, 1254 (N.D.Ill.1995). For 22 months the case remained pending in the district court, although no additional evidence was taken. Eventually, when Andrew was about to enter the eighth grade, the district court granted summary judgment to the school district. The court found that the modified IEP was "reasonably calculated to confer an educational benefit and help the student advance from grade to grade," as required by the IDEA. 898 F.Supp. at 1263.

■ Andrew's parents appeal the district court's decision.[1] We review the district court's factual findings for clear error and its legal determinations *de novo. Bd. of Educ. of Murphysboro v. Ill. St. Bd. of Educ.,* 41 F.3d 1162, 1166–67 (7th Cir.1994). From the time Andrew's parents challenged the modified IEP until now, the original IEP has remained in place.[2] Andrew's parents have agreed to a new IEP which will take effect in September 1996 when Andrew enters high school. This agreement is with a different school district than the appellee.

**II.**

■ Article III of the United States Constitution limits this court's jurisdiction to actual, ongoing cases or controversies. U.S. Const. Art. III, § 2; *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477–78, 110 S.Ct. 1249, 1253–54, 108 L.Ed.2d 400 (1990). This requirement extends throughout the pendency of an action, not just at the time a case is filed. *Id.; Jordan By and Through Jones v. Indiana High School Athletic Ass'n, Inc.,* 16 F.3d 785, 787 (7th Cir.1994). This court is limited to deciding actual controversies by a judgment that can be executed and not providing opinions upon moot questions or abstract propositions. *Lewis,* 494 U.S. at 477–

78, 110 S.Ct. at 1253–54. Absent an actual live controversy, a case is moot and must be dismissed as nonjusticiable. *Id.*

By its own admission, the district court paused only briefly to consider whether this case was moot. Although the parties dispute a modified IEP for Andrew's fifth grade year, and at the time of the district court's opinion Andrew was entering the eighth grade, the district court concluded that this case satisfied the "capable of repetition yet evading review" exception to the mootness doctrine. Because the school district and Andrew's parents had "conflicting educational philosophies and perceptions of the mainstreaming and methodological requirements under the IDEA," the district court reasoned that it could "adequately inform the parties of the contours of their continuing relationship" under that statute. 898 F.Supp. at 1256.

■ Andrew has graduated from eighth grade and will enroll in high school this fall. This case concerns his fifth grade educational needs. Andrew's parents have already agreed to a new IEP with a different school district which will be in place when he enters high school. Accordingly, Andrew and his parents are without "an actual injury traceable to the defendant [that could] be redressed by a favorable judicial decision." *Lewis,* 494 U.S. at 477, 110 S.Ct. at 1253. This court has no remedy to grant Andrew's parents. Judgment either way would not effect Andrew's fifth grade IEP, a circumstance long gone. Thus, this case is moot.

■ The district court decided, and Andrew's parents argue on appeal, that this case falls into the exception to the mootness doctrine for disputes "capable of repetition yet evading review." To fall within this exception, the alleged injury must be of inherently limited duration and likely to happen again to the same complaining party. *Mur-*

---

**1.** The district court had jurisdiction pursuant to 20 U.S.C. § 1415(e)(2) (right to bring a civil action under the IDEA) & (e)(4)(B) (district court may award attorneys' fees). This court has jurisdiction pursuant to 28 U.S.C. § 1291.

**2.** 20 U.S.C. § 1415(e)(2) provides: "During the pendency of any proceedings conducted pursu-

ant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child, ..." This is termed the "stay-put" provision.

*phy v. Hunt,* 455 U.S. 478, 482, 102 S.Ct. 1181, 1183–84, 71 L.Ed.2d 353 (1982); *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348–49, 46 L.Ed.2d 350 (1975) (per curiam). Even if this claim were to be considered transitory, there is no reasonable expectation, much less a demonstrated probability, that the same controversy will recur between Andrew and the school district. He has successfully completed grade school and is on his way to high school. He will never again attend fifth grade. The IEP modification at issue before the Level I and II hearing officers and in the district court has been replaced by an IEP for Andrew's high school years. Andrew's parents struck this agreement with a different entity than the Board of Education of Downers Grove School District No. 58. There is no continuing controversy. This school district has no authority to modify any IEP involving Andrew. This case is therefore distinguishable from *Honig v. Doe,* 484 U.S. 305, 318, 108 S.Ct. 592, 601, 98 L.Ed.2d 686 (1988), and *Bd. of Educ. v. Rowley,* 458 U.S. 176, 186 n. 9, 102 S.Ct. 3034, 3041 n. 9, 73 L.Ed.2d 690 (1982), in which a reasonable expectation existed that the school district could "reinflict" the asserted injury. Because Andrew cannot show a reasonable expectation that he will be subject to the same action again, *Weinstein,* 423 U.S. at 149, 96 S.Ct. at 348–49, his claim is not "capable of repetition yet evading review," and therefore is non-justiciable as moot. *Cf. Holstein v. City of Chicago,* 29 F.3d 1145, 1148 (7th Cir.1994) (small likelihood that plaintiff will be subject to challenged procedures in the future means mootness exception not satisfied); *Jones v. Sullivan,* 938 F.2d 801, 805–07 (7th Cir.1991) (because plaintiffs received relief they requested, mootness exception not satisfied).[3]

As this controversy wound its way through the administrative system and then the federal courts, Andrew benefitted from the "stay-put" provision. See 20 U.S.C. § 1415(e)(2). Because the status quo remained in effect from the time Andrew's parents challenged the school district's attempt to modify the IEP, they *de facto* received the relief they originally sought from the Level I hearing examiner; the modified IEP never took effect. Why then did Andrew's parents appeal the district court's decision if the passage of time granted them, albeit inadvertently, what they originally sought? Attorneys fees the true objective of this appeal. The IDEA provides that in any action or proceeding brought under the Act, "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a handicapped child or youth who is the prevailing party." 20 U.S.C. § 1415(e)(4)(B). If we reverse the district court's decision and Andrew's parents prevail on the merits, they may be entitled to attorneys' fees. If we affirm, Andrew's parents would lose any fees they could recover under the IDEA for the prosecution of this case.

Because this case is moot, we cannot consider the merits of the district court's memorandum opinion and order. To do so would be to issue an advisory opinion solely to determine who prevailed. But these circumstances do not leave open the issue of attorneys' fees.

"Prevailing party" has the same meaning under 20 U.S.C. § 1415(e) as 42 U.S.C. § 1988, under which a prevailing party may be granted attorneys' fees for successful prosecution of certain civil rights actions. Courts interpreting these statutes apply the same principles to determine a party's entitlement to attorneys' fees and costs. In *Farrar v. Hobby,* the Supreme Court examined the "prevailing party" standard for § 1988 and stated that in order to qualify the "plaintiff must obtain an enforce-

---

3. The IDEA cases the district court relied upon to conclude that this case met the "capable of repetition yet evading review" exception involve debates on the meaning of a phrase which in the future the same parents and the same school district could dispute. *Murray v. Montrose County School Dist.,* 51 F.3d 921, 931 n. 16 (10th Cir.) (appropriate interpretation of the phrase "least restrictive environment" in 20 U.S.C. § 1412(5)(B)), *cert. denied,* ––– U.S. –––, 116 S.Ct. 278, 133 L.Ed.2d 198 (1995); *Sacramento City School Dist. v. Rachel H.,* 14 F.3d 1398, 1402–03 (9th Cir.) (dispute over IDEA's mainstreaming requirements), *cert. denied,* ––– U.S. –––, 114 S.Ct. 2679, 129 L.Ed.2d 813 (1994); *Daniel R.R. v. St. Bd. of Educ.,* 874 F.2d 1036, 1040 (5th Cir.1989) (same). No such debate exists in this case.

 

able judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement." 506 U.S. 103, 111, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992). The Court explained that "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at 111–112, 113 S.Ct. at 573. This court has also emphasized that to be a prevailing party it is insufficient to show that but for the request for a hearing and the hearing itself, the school district would not have provided the child with special educational services. *See Brown v. Griggsville Comm. Unit School Dist. No. 4*, 12 F.3d 681, 684 (7th Cir.1993). " '[B]ut for' is not an adequate conception of cause ... and the question of whether a party prevailed because of the legal proceeding rather than for some other reason is, at a minimum, a question about causality." *Id.* "The quantification 'at a minimum' is a bow in the direction of *Farrar v. Hobby*, where in dictum the Supreme Court suggested that not only must the lawsuit be a catalyst of legal change favorable to the plaintiff, but the plaintiff must have obtained relief through a judgment or settlement." *Id.*

In this case, Andrew's parents received "interim relief for which attorneys' fees may not be awarded." *Hunger v. Leininger*, 15 F.3d 664, 670 (7th Cir.) (emphasis in original), *cert. denied*, —— U.S. ——, 115 S.Ct. 123, 130 L.Ed.2d 67 (1994). The law does not view Andrew's parents as a prevailing party under § 1415(e)(4)(B) because their only ultimate victory under the IDEA is the invocation of the stay-put provision. The outcome of this suit resulted in no enforceable obligations for the school district. Any relief that Andrew and his parents received was not in the form of a judgment or settlement. Thus, although we do not reach the merits of the district court's decision, Andrew and his parents cannot be considered to have substantially prevailed, and no attorneys fees or costs will be awarded to them under the applicable federal statute.

## III.

This case is moot because Andrew can no longer suffer any actual or threatened injury as a result of the school district's desire to modify his fifth grade IEP. Accordingly, the district court's opinion is VACATED and this case is REMANDED with directions to enter judgment for the school district on that ground. Costs are to be taxed against the appellant pursuant to Fed. R.App. P. and Circuit Rule 39. The parties are to bear their own attorneys' fees.

VACATED and REMANDED.