In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1901

JASON OSTBY and JILL OSTBY,
individually and as next friends of
Jacob O., a minor,

*Plaintiffs-Appellants*,

*v.*

MANHATTAN SCHOOL DISTRICT
NO. 114,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:14-cv-07778 — **John Robert Blakey**, *Judge.*

ARGUED DECEMBER 5, 2016 — DECIDED MARCH 16, 2017

Before EASTERBROOK and ROVNER, *Circuit Judges*, and SHADID, *District Judge*.[*]

ROVNER, *Circuit Judge.* Jason and Jill Ostby sued Manhattan School District 114 ("District") under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("Act"), for review of an administrative decision regarding their son's individualized educational program. With the exception that we note below, we vacate the district court's judgment and remand the case with directions to dismiss it as moot.

## I.

The Act is designed "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). In order to implement this goal, the Act provides for the evaluation of disabled children and the development of an individualized education program ("IEP") for each disabled child. The IEP is a written statement that is developed, reviewed and periodically revised in accordance with the Act. 20 U.S.C. § 1414(d)(1)(A)(i). It documents the child's present levels of academic achievement and functional performance; provides a list of measurable annual goals; describes how the child's progress towards the goals will be measured; and presents a statement of the special education

---

[*] The Honorable James E. Shadid, of the Central District of Illinois, sitting by designation.

and related services to be provided to the child, among other things. 20 U.S.C. 1414(d)(1)(A).

The Ostbys' son, Jacob, has been diagnosed with Attention Deficit Hyperactivity Disorder and Disruptive Mood Dysregulation Disorder. As a result of these disorders, he struggles with self-management, behavior regulation and social skills. Consequently, he requires an IEP and has received IEPs since he began attending pre-school at the age of four. In his pre-school and kindergarten years, Jacob's parents sometimes requested additional testing or changes to the services provided to Jacob under his IEP. At times, the parents obtained private evaluations of their son's condition at their own expense. For his first year of kindergarten, Jacob was placed in the early childhood special education classroom. When he repeated kindergarten, he was moved to a general education classroom with additional support services. Jacob's second year of kindergarten was marked by a number of behavioral disturbances and recommendations by the District to change Jacob's placement and services. His parents disagreed with some of these recommendations and Jacob was allotted additional support services instead. By January 2014, the Ostbys had opted to file a due process complaint, a mechanism in the Act for parents to initiate an administrative hearing process to resolve disputes surrounding IEPs. 20 U.S.C. § 1415(b).

Near the end of that school year, on March 26, 2014, after additional testing, the Ostbys and the psychologist they hired to evaluate Jacob met with the District to develop a new IEP. As a result of that meeting, some of Jacob's services were discontinued and a Behavioral Intervention Plan was adopted.

The District also recommended that Jacob's placement be changed from the general education setting to the Social Emotional Learning Foundations program ("SELF program"). Jacob's parents objected to the SELF program placement and it was not adopted at that time. With approximately twenty days left in the school year, Jacob struggled with the new Behavioral Intervention Plan.

On June 5, 2014, as the school year ended, the parties reconvened to discuss Jacob's IEP. As a result of this meeting, the District again recommended that Jacob be placed in the SELF program for first grade, his parents again objected and the District sought to place Jacob in the SELF program over his parents' objections. The SELF program is a restricted form of education that is not part of a mainstream classroom. Moreover, the SELF program was housed at a different school in a different school district. One goal of the Act is to educate disabled children in the least restrictive environment:

> To the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

20 U.S.C. § 1412(a)(5)(A). Jacob's parents believed that the SELF program was more restrictive than necessary and that he

should remain in the general education setting in his home district.

When parents object to a new placement and file a due process complaint, a "stay-put" provision in the Act maintains the *status quo* of the child's placement until the complaint has been fully resolved. 20 U.S.C. § 1415(j) ("during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, … until all such proceedings have been completed."). As a result of the stay-put provision, Jacob was never moved to the SELF program. As the administrative process progressed through hearing, decision, and appeal, Jacob remained in the general education setting with support services in place. After the administrative process resulted in a ruling in favor of the District, the Ostbys filed suit in the district court, seeking review of the decision. The district court upheld the administrative decision, concluding that the District met the Act's substantive requirement of providing Jacob with a free appropriate public education when it decided that placement in the SELF program for first grade was the least restrictive environment that would meet that goal. The court also ordered the District to reimburse the Ostbys for certain expenses they incurred in having Jacob evaluated. The Ostbys appeal.

## II.

In their appeal, the Ostbys contend that the district court erred when it found that the District's placement of Jacob in the SELF program complied with the Act's "least restrictive

environment" requirement. The District continues to defend Jacob's first-grade placement in the SELF program and urges this court to affirm the district court's grant of summary judgment in favor of the District. The district court's opinion granting judgment in favor of the District indicated that, as of a December 2015 status hearing, "a general consensus [was] thankfully emerging among the parties regarding Jacob's placement and educational plan going forward." R. 120, at 17–18. At oral argument, we asked the parties if an agreement on Jacob's placement had in fact been reached and whether that agreement rendered the appeal moot. The parties represented that they had agreed to a new IEP for Jacob's third grade year and it did not include placement in the SELF program. We ordered supplemental briefing on the issue of mootness.

As a result of that briefing, we now know that, as the Ostbys' complaint moved through the system, Jacob progressed through school, completing first and second grade at his home school in the general education setting because of the stay-put provision. Jacob is now in third grade at a different school in the same District; his prior school housed students only through second grade. The District and the Ostbys have reached an agreement regarding Jacob's IEP and his placement in general education for third grade, and the District has no pending proposal to move Jacob to the SELF program. Even though Jacob is now in third grade and the District claims to have no present intention of transferring him to the SELF program, the District nevertheless continues to defend its decision to place Jacob in the SELF program for first grade. And even though they have now agreed to a new IEP for third

grade, the Ostbys continue to challenge the District's decision to place Jacob in the SELF program in first grade.

The Ostbys maintain that the appeal is not moot because (1) this court has the power to redress Jacob's past injuries by an award of attorneys' fees; (2) the court can prevent future harm to Jacob by rejecting the SELF placement as suitable; and (3) the case falls into the exception for injuries that are capable of repetition but evading review because the District is likely to revisit its decision to transfer Jacob into the SELF program in the future.

Article III of the Constitution limits our jurisdiction to actual, ongoing cases or controversies. *Honig v. Doe*, 484 U.S. 305, 317 (1988); *Board of Educ. of Downers Grove Grade Sch. Dist. 58 v. Steven L.*, 89 F.3d 464, 467 (7th Cir. 1996). This requirement applies through all stages of federal judicial proceedings; to sustain jurisdiction, it is not enough that the dispute was alive when the case was filed or when an appeal was taken. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78 (1990); *Honig*, 484 U.S. at 317–18; *Steven L.*, 89 F.3d at 467. The parties must continue to have a personal stake in the outcome of the lawsuit. *Lewis*, 494 U.S. at 478. "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis*, 494 U.S at 477. *See also Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 596 (7th Cir. 2006) (a case becomes moot when a court's decision can no longer affect the rights of litigants in the case and simply would be an opinion advising what the law would be upon a hypothetical state of facts).

The Ostbys cannot meet this standard at this stage of the litigation because there is no longer an injury that can be redressed by a favorable decision. Jacob is no longer in first grade and is no longer subject to the challenged IEP. More importantly, the Ostbys and the District have now agreed that the general education setting is appropriate for Jacob, and the District has no present intention to transfer him to the SELF program. The parties have agreed to an IEP for his third grade year in his new school. A finding that the district court erred in affirming the appropriateness of Jacob's first grade IEP would offer him no relief at this stage. *See Brown*, 442 F.3d at 596 (in an action seeking only injunctive relief, once the threat of the act sought to be enjoined dissipates, the suit ordinarily must be dismissed as moot); *Lillbask ex rel. Mauclaire v. Connecticut Dept. of Educ.*, 397 F.3d 77, 83–84 (2d Cir. 2005) (where a student advances with peers under a stay-put order, and the school district concedes after the lifting of stay-put order that the parents' preferred placement is now appropriate, there is no longer a live controversy).

Nor is Jacob's case subject to the exception to the mootness doctrine for cases "capable of repetition, yet evading review." *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016). That exception applies only in limited circumstances:

> where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.

*Lewis*, 494 U.S. at 481; *Murphy v. Hunt*, 455 U.S. 478, 482 (1982). In this case, the District concedes that the IEP recommendation that Jacob be placed in the SELF program was, by its nature, too short in duration to be fully litigated prior to its cessation or expiration. *See Honig*, 484 U.S at 322 (acknowledging that administrative and judicial review under the Education of the Handicapped Act is often "ponderous," taking a number of years to reach resolution); *Brown*, 442 F.3d at 599 ("Because IEP challenges usually endure longer than the nine-month school year, most circuits hold that the first, durational element of the mootness exception is satisfied in these cases."). The first part of the exception is therefore met.

The question, then, is whether there is a reasonable expectation that Jacob will be subject to the same action again. The Ostbys rely on *Honig* to demonstrate that the injury here is capable of repetition. In *Honig*, the Supreme Court addressed a challenge to a state-wide policy that allowed schools to unilaterally change the placement of a child for conduct growing out of the child's disability. *Honig*, 484 U.S. at 318–20. For example, under California's state-wide policy, a school could suspend or expel a student for behavioral incidents arising from the student's disability. Of the two plaintiffs in *Honig*, one had aged out of the school system entirely during the pendency of the litigation, and the Court concluded that the case was moot as to that student. 484 U.S. at 318. The other student, however, remained eligible for another year of school in the State's system. The nature of his disability made it likely that he would continue to engage in disruptive conduct at school. And the State, throughout the litigation, continued to insist that all local districts retained the residual authority to

exclude disabled children for dangerous conduct. In that instance, where the student was likely to engage in the same conduct and the State held to its policy position, the Court determined that there was a reasonable expectation that the student would once again be subjected to a unilateral change in placement for conduct growing out of his disabilities. 484 U.S. at 318–20. *See also Brown*, 442 F.3d at 599 (in assessing whether there is a reasonable likelihood that school officials would subject a student to the same action again, courts consider (1) the nature of the student's disability, and (2) the school officials' insistence on their right to unilaterally take the same action).

The Ostbys argue that Jacob continues to suffer from disabilities that result in impairments to his behavior and mood, and he continues to be educated pursuant to IEPs that are revised at least annually. Although he has changed schools, he is in the same District. The Ostbys assert that Jacob is therefore highly likely to be faced with a SELF program placement issue again. A ruling that the SELF program placement was inappropriate could prevent further injury, they contend. They also point out that the District has not formally settled the case; it has simply agreed to a new IEP and says that it has no present intention of changing Jacob's placement.

It is true that Jacob suffers from disabilities that can be expected to continue to cause impairments to his behavior and mood. However, unlike the State in *Honig*, which continued to defend the applicability of its policy in the future, the District here now agrees that there is no need to place Jacob in the SELF program. His current IEP does not include a SELF

program placement and his parents are in agreement with the District on his current placement. That makes his case more akin to *Lillbask* and *Brown* than *Honig*. In *Lillbask,* the defendants expressly represented to the court that they had "no present intent to remove [the student] from his mainstream educational environment" to a program in a different district. 397 F.3d at 88. The student argued that, despite the defendants' present concession about the propriety of the student's placement in his home district, the defendants could not demonstrate that his challenge to his prior IEP "is moot because defendants may, in formulating some future IEP, again attempt to place" the student at a private special education facility. 397 F.3d at 88. The court held that this possibility was not enough to save the case from mootness:

> The *possibility* of such a move exists in the case of every disabled child who is presently in a mainstream classroom and for whom a new IEP must be prepared annually. A plaintiff must point to something more in the record to lift that possibility beyond the speculative.

*Lillbask*, 397 F.3d at 88 (italics in original). As in *Lillbask*, the Ostbys point to nothing in the record to call into question the sincerity of the District's declaration that it has no intention to move Jacob into the SELF program. Instead, the parties' agreement on Jacob's current IEP suggests that a proposal to transfer Jacob from a mainstream educational environment is not reasonably likely to occur. *Lillbask*, 397 F.3d at 89.

In *Brown*, a student with autism who challenged an IEP moved to another district during the pendency of the litigation.

His parents then agreed to a new IEP in the new district. We considered whether the case became moot or whether it fell under the "capable of repetition yet evading review" exception to the mootness doctrine. We concluded that the case was distinguishable from *Honig* and was moot:

> Here, Bobby's autism presents an evolving set of challenges for educators, one that requires his IEP to be periodically revised. What was right for Bobby in kindergarten may not be the proper educational program when he enters the third grade. The dispute over the 2002–2003 IEP turned on whether Bobby was ready for full-time mainstream class. Now, as a nine-year old, Bobby's readiness for mainstream education presents a different question calling for reassessment of his educational development. Were we to decide, at this later date, whether mainstreaming was right for Bobby back in 2002–2003, we would be issuing, in effect, an advisory opinion. Our decision would merely tell the parties who was correct about Bobby's outdated IEP. It would do nothing to define the contours of the parties' continuing legal relationship under the IDEA such that future repetitions of the injury could be avoided. The case therefore must be dismissed as moot.

*Brown*, 442 F.3d at 599–600. Jacob's circumstances are virtually indistinguishable from those in *Brown* and *Lillbask*. We must similarly conclude that his appeal is moot.

Nor is the possible availability of attorneys' fees enough to keep the case alive under these circumstances. Under the Act, a court may, in its discretion, award attorneys' fees to a prevailing party who is a parent of a child with a disability. 20 U.S.C. § 1415(i)(3)(B). The term "prevailing party" under section 1415(i)(3)(B) has the same meaning as the phrase does in 42 U.S.C. § 1988. *Board of Educ. of Oak Park v. Nathan R.*, 199 F.3d 377, 382 (7th Cir. 2000). A party prevails if he or she obtains relief on the merits through an enforceable judgment, consent decree or settlement that materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff. *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992); *Nathan R.*, 199 F.3d at 382. The term "prevailing party" does not include a party that achieves the desired result without a judgment on the merits or a court-ordered consent decree but because the lawsuit brought about a voluntary change in the defendant's conduct. *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Res.*, 532 U.S. 598, 600 (2001).

Once a case is moot, we cannot consider the merits of the district court's decision to determine whether the parents are prevailing parties for the purpose of assessing attorneys' fees. *Nathan R.*, 199 F.3d at 381 ("Because we would need to consider the merits to determine whether the Parents are prevailing parties, we agree that we cannot decide whether the Parents would be entitled to attorneys' fees from the proceedings in the district court."); *Steven L.*, 89 F.3d at 468 ("Because this case is moot, we cannot consider the merits of the district court's memorandum opinion and order. To do so would be to issue an advisory opinion solely to determine who pre-

vailed."). The Ostbys did not prevail before the district court and we may not consider the merits of that decision solely for the purpose of determining their entitlement to attorneys' fees. To the extent that they achieved what they were seeking when the District eventually agreed that the SELF program placement was no longer appropriate going forward, that informal and voluntary agreement does not render them a prevailing party under *Buckhannon*.

Nor are the Ostbys entitled to attorneys' fees for the relief they obtained from the application of the stay-put provision during the pendency of the administrative process. Because they initiated the administrative process and invoked the stay-put provision, Jacob was able to stay in his preferred educational placement until the parties reached agreement on a new IEP that did not include placement in the SELF program. But "this *de facto* 'win' does not rise to the level of an enforceable judgment, consent decree, or settlement that materially alters the relationship between the parties." *Nathan R.*, 199 F.3d at 382. The relief achieved was only interim in nature, and "this circuit previously has held that the receipt of interim relief does not qualify a party for attorneys' fees." *Nathan R.*, 199 F.3d at 382. *See also Steven L.*, 89 F.3d at 469 (attorneys' fees may not be awarded for interim relief). And in any case, informal relief, provided voluntarily by the defendant, does not entitle the parents to prevailing party status under *Buckhannon*. *See also Steven L.*, 89 F.3d at 469 (where the parents' only ultimate victory is the invocation of the stay-put provision, and the outcome of the suit results in no enforceable obligations for the school district, the parents cannot be considered to have substantially prevailed). There is therefore

no relief that this court could grant and the appeal challenging Jacob's first-grade placement in the SELF program is moot.

However, there is one part of the underlying case that is not moot. In addition to challenging the District's decision to place Jacob in the SELF program, the Ostbys also sought reimbursement for private evaluations of Jacob. The district court awarded the Ostbys $3126.10 for that claim and the District did not challenge that ruling on appeal. That part of the district court's judgment is not moot and remains intact on remand. *See Brown*, 442 F.3d at 596 (where a plaintiff seeks monetary damages, his case is not moot even if the underlying misconduct that caused the injury has ceased). In every other respect, we vacate the district court's judgment and remand the case with directions to dismiss it as moot. Each party shall bear their own costs on appeal.

VACATED AND REMANDED IN PART.