FILED
United States Court of Appeals
Tenth Circuit

June 12, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

STEVEN R.F., a minor by and through his
mother Carrie Fernandez,

    Plaintiff - Appellee,

v.

HARRISON SCHOOL DISTRICT NO. 2,
and various of its elected and appointed
representatives in their official capacities,

    Defendant - Appellant.

No. 18-1327
(D.C. No. 1:17-CV-00629-RBJ)
(D. Colo.)

_____

**ORDER**
_____

Before **BRISCOE**, **LUCERO**, and **PHILLIPS**, Circuit Judges.
_____

This matter is before the court to correct clerical errors related to the inclusion of

record citations in the Opinion issued on May 28, 2019. Specifically, the Clerk is directed

to substitute the version of the decision attached to this order for the version issued

previously. The revised version removes the record citations, and is otherwise exactly the

same.

Entered for the Court

ELISABETH A. SHUMAKER, Clerk

FILED
United States Court of Appeals
Tenth Circuit

May 28, 2019

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

STEVEN R.F., a minor by and through his
mother Carrie Fernandez,

     Plaintiff - Appellee,

v.

HARRISON SCHOOL DISTRICT NO. 2,
and various of its elected and appointed
representatives in their official capacities,

     Defendant - Appellant.

No. 18-1327

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:17-CV-00629-RBJ)**
_____

John R. Stanek, Anderson, Dude, and Lebel, Colorado Springs, Colorado (William K.
Dude, Anderson, Dude, and Lebel, Colorado Springs, Colorado, and W. Stuart Stuller,
Caplan & Ernest, LLP, Boulder, Colorado, with him on the briefs), appearing for
Appellant.

Michael C. Cook, Cook Varriano, P.C., Colorado Springs, Colorado, appearing for
Appellee.
_____

Before **BRISCOE**, **LUCERO**, and **PHILLIPS**, Circuit Judges.
_____

**BRISCOE**, Circuit Judge.
_____

In this appeal, Defendant-Appellant Harrison School District No. 2 asks us to

reverse the district court's ruling that it violated the Individuals with Disabilities Education Act (IDEA) by failing to provide Plaintiff-Appellee Steven R.F. with a free appropriate public education. Because we conclude that the case is moot, we dismiss this appeal, vacate the district court's ruling, and remand with instructions to dismiss as moot.

I

The IDEA provides federal funds to states for educating children with disabilities, guaranteeing disabled children between the ages of three and twenty-one access to a free appropriate public education (FAPE). 20 U.S.C. §§ 1400(d), 1412(a)(1). A FAPE "emphasizes special education and related services designed to meet [the child's] unique needs." Id. § 1400(d). A child's individualized education program (IEP) governs how a school will provide him or her a FAPE. See id. § 1414(d)(1)(A). The IEP is a written statement developed in a meeting attended by the student's parents, teacher, and a special education professional that summarizes the student's abilities, outlines goals for the student's education, specifies the services the student will receive to achieve those goals, and establishes criteria to evaluate the student's progress. Id. § 1414(d)(1).

The IDEA also requires state and local educational agencies receiving funding under the Act to "establish and maintain procedures . . . to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision" of a FAPE. Id. § 1415(a); see also Honig v. Doe, 484 U.S. 305, 311–12 (1988). For example, the IDEA requires that a child's parents be notified by the school district of any proposed change to the child's educational placement. 20 U.S.C. § 1415(b)(3). It also requires that the parents be permitted to participate in discussions

2

relating to their child's evaluation and education.  Id. § 1414(d)(1)(B)(i).  And it requires states to allow parents the opportunity to bring a complaint about "any matter relating to the identification, evaluation, or educational placement of [their] child, or the provision of a [FAPE] to such child."  Id. § 1415(b)(6).

## II

Steven R.F. is a fourteen-year-old boy with severe autism.  In 2013, the District agreed to place Steven at the Alpine Autism Center, a private out-of-district facility in Colorado Springs.

In 2014, the District proposed to move Steven from Alpine to a public school called the School of Excellence (SOE) for the 2014–2015 schoolyear.  Steven's mother, Carrie Fernandez (Mother), objected and filed a state complaint asserting various IDEA violations.  After an investigation, the State Complaint Officer (SCO) agreed with Mother and issued a written decision (2014 SCO Order).  As a remedy, the SCO ordered, among other things, that the District could not change Steven's placement until: (1) staff members from any new placement "proposed by" the District "have observed [Steven] . . . at [Alpine] to understand the nature of [his] educational and behavioral functioning" and (2) the District "convenes an IEP meeting, facilitated by a neutral facilitator (not employed by the School District) . . . and develops an IEP that includes a description of placement sufficient to allow [Mother] to understand what is being proposed."  App., Vol. II at 618.  Steven remained at Alpine for the 2014–2015 and 2015–2016 schoolyears.

On March 29, 2016, and April 5, 2016, the District held Steven's IEP meeting for

3

the 2016–2017 schoolyear. The IEP meeting was facilitated by the District's school psychologist, Michelle McFall. Toward the end of the meeting, after agreeing on required aspects of the IEP, the attendants discussed what facility Steven would attend. Amy Lloyd, the District's special education coordinator, proposed three alternatives: Roundup Fellowship, Alpine, and the SOE. The team decided on the SOE, over Mother's objection. At the time of the IEP meeting, no staff members from either the SOE or Roundup had observed Steven at Alpine.

After the meeting, McFall prepared a "Prior Written Notice of Special Education Action" summarizing the IEP Team's discussions and decisions. The notice identified the SOE as Steven's placement for 2016–2017, but did not identify which program within the SOE Steven would attend.

The SOE is a public school operated by Pikes Peak Board of Cooperative Educational Services. The SOE has two programs relevant in this case: the Communication and Language program (COLA) and the Learning Independence by Educating Responsible Trustworthy Youth program (LIBERTY). COLA is designed for students who have significant behavior issues and who are largely unable to work independently. LIBERTY is designed for students with either an autism spectrum diagnosis or a dual diagnosis and who are generally able to express their wants and needs and are able to work in small groups. The District believed that either program could have implemented Steven's IEP.

On May 5, 2016, Mother filed another state complaint alleging that the District violated the 2014 SCO Order by changing Steven's educational placement and by not

utilizing a neutral facilitator for his 2016 IEP meeting. She also asserted that the District's placement decision of the SOE was not based on Steven's individual needs, that the District wrongfully predetermined Steven's placement, and that the District did not make a written offer of educational placement. After an investigation, the SCO ruled, as relevant, that the District had violated the 2014 SCO Order by not utilizing a neutral facilitator for Steven's 2016 IEP meeting, and that the District's decision to move Steven to the SOE was predetermined and not based on Steven's individual needs.

The District challenged the SCO decision by filing a due process complaint with the Colorado Office of Administrative Courts pursuant to 20 U.S.C. § 1415(f). The District sought a determination that its proposal to transfer Steven to the SOE for the 2016–2017 schoolyear was an appropriate offer of FAPE. The Administrative Law Judge deciding the complaint concluded that the "District made an offer of FAPE, and that any procedural violations that may have occurred did not deprive [Steven] of FAPE or educational benefit, and did not deprive [Mother] of her right to meaningfully participate in the decision-making process." App., Vol. II at 439.

Mother appealed the ALJ's determination to federal district court pursuant to 20 U.S.C. §§ 1415(i)(2)(A) and (3)(A) and 34 C.F.R. § 300.516(b) and asked the district court to find that the 2016–2017 IEP denied Steven the FAPE to which he is entitled. She asserted that the District violated the IDEA by: (1) not complying with the terms of the 2014 SCO Order; (2) not identifying Steven's proposed educational placement (COLA or LIBERTY) in his 2016–2017 IEP; (3) predetermining Steven's placement in

5

the SOE; and (4) creating an IEP not based on Steven's individual needs.[1]  After merits briefing, the district court concluded that the District had violated the 2014 SCO Order and various procedural protections within the IDEA, and that these violations amounted to the denial of a FAPE.  Specifically, the district court ruled, as regards Steven's 2016 IEP: (1) the District failed to include a specific offer of educational placement; (2) the District failed to comply with the requirements of the 2014 SCO Order,[2] which were designed to protect Mother's right to a "fair IEP meeting," which includes "a clear offer of educational placement" and "meaningful participation in the IEP process," App., Vol.

---

[1] Mother also asserted a claim for a violation of the Rehabilitation Act, 29 U.S.C. § 701 et seq.  The district court concluded that the District did not violate the Rehabilitation Act, and Mother does not appeal that ruling.

[2] The 2014 SCO Order prohibited the District from changing Steven's educational placement until:

   a.  The School District conducts [a] comprehensive evaluation[] of [Steven], in accordance with the requirements of IDEA;

   b.  Staff members from any new placement proposed by the School District, which staff would have responsibility for providing special education and related services to [Steven] have observed [him] . . . at [Alpine] to understand the nature of [his] educational and behavioral functioning.

   c.  The School District convenes an IEP meeting, facilitated by a neutral facilitator (not employed by the School District), for [Steven] that complies with all procedural requirements of IDEA, particularly all of the provisions that the SCO has found the School District to have violated, and develops an IEP that includes a description of placement sufficient to allow [Mother] to understand what is being proposed.

App., Vol. III at 618.

6

VII at 1801; and (3) taken together, those failures amounted to the denial of a FAPE. The district court ordered the District to reimburse Mother for Steven's tuition at Alpine for 2016–2017 and awarded her attorney's fees as the prevailing party.

III

Mother argues that the appeal is moot, and we must address that issue first because Article III limits courts to adjudicating "actual, ongoing controversies." Honig, 484 U.S. at 317. To satisfy the case-or-controversy requirement of Article III, "the parties 'must continue to have a personal stake in the outcome of the lawsuit' throughout the various stages of litigation." Garcia v. Bd. of Educ. of Albuquerque Pub. Sch., 520 F.3d 1116, 1123 (10th Cir. 2008) (quoting Lewis v. Cont'l Bank Corp., 494 U.S. 472, 478 (1990)).

This case concerns Steven's 2016–2017 IEP, which governed a schoolyear that has passed. Although Mother initially sought and was awarded reimbursement for Steven's tuition at Alpine, the parties agree that the District paid for Steven's enrollment at Alpine pursuant to the IDEA's stay-put provision,[3] and need not reimburse Mother for anything. Therefore, unless a mootness exception applies, there is no "actual, ongoing controvers[y]" before us. Honig, 484 U.S. at 317.

The District argues that this case falls into the exception to the mootness doctrine for cases "capable of repetition yet evading review." Id. at 318 (quoting Murphy v. Hunt, 455 U.S. 478, 482 (1982) (per curiam)). This exception, which applies only in

---

[3] The stay-put provision provides that "during the pendency of any proceedings conducted pursuant to [the IDEA], unless the State or local educational agency and the parents otherwise agree, the child shall remain in [his] then-current educational placement . . . ." 20 U.S.C. § 1415(j).

7

"exceptional situations," Spencer v. Kemna, 523 U.S. 1, 17 (1998), can prevent dismissal on mootness grounds when "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party would be subjected to the same action again," Murphy, 455 U.S. at 482 (quoting Ill. Elections Bd. v. Socialist Workers Party, 440 U.S. 173, 187 (1979)).

The first prong of the exception is clearly satisfied. A one-year IEP is, by its nature, "too short [in duration] to be fully litigated prior to its . . . expiration." Id.; see also Sch. Comm. of Town of Burlington v. Dep't of Educ., 471 U.S. 359, 370 (1985) ("[T]he [IDEA] review process is ponderous. A final judicial decision on the merits of an IEP will in most instances come a year or more after the school term covered by that IEP has passed.").

The pivotal issue then becomes whether the District has shown that there is a "reasonable expectation" that it will be subjected to the same action again. The District's "reasonable expectation" must be more than "a mere physical or theoretical possibility"; it must be something akin to a "demonstrated probability" that the District will again be in this situation. Murphy, 455 U.S. at 482. The District argues that Mother "almost certainly will challenge [Steven's most recent] IEP when these proceedings have been completed," Aplt. Reply at 5, and notes that "[a]t the end of [Steven's December 4, 2018] IEP meeting, [Mother] expressed her disagreement" with the IEP team's proposed placement at Sierra High School in its The Autism Program, id. at n.2. The District argues a live controversy remains: whether the District will have to maintain Steven's

8

enrollment at Alpine during the pendency of any challenge by Mother to Steven's December 4, 2018 IEP. Even assuming that this amounts to a reasonable expectation of future IDEA disputes between the District and Mother, it does not satisfy the mootness exception in this case because the procedural challenges Mother raises are fact-specific to Steven's 2016–2017 IEP proceedings.

Mother relies on two cases in support of her mootness argument: Board of Education of Downers Grove Grade School District No. 58 v. Steven L., 89 F.3d 464 (7th Cir. 1996), and District of Columbia v. Jeppsen ex rel. M.J., 468 F. Supp. 2d 107 (D.D.C. 2006). Each case involved a challenge to an IEP for a completed schoolyear and the application of the stay-put provision preventing the school from implementing the challenged IEP. See Steven L., 89 F.3d at 465; Jeppsen, 468 F. Supp. 2d at 109. In Steven L., by the time the case reached the Seventh Circuit, the child's parents had "already agreed to a new IEP with a different school district." 89 F.3d at 467. In Jeppsen, the parents and school district had reached a settlement and agreed to the student's educational placement for the schoolyear at issue. 468 F. Supp. 2d at 110. In each case, the court concluded that the case was moot. In Steven L., the court concluded that the capable-of-repetition exception did not apply because

> [the student] has successfully completed grade school and is on his way to high school. He will never again attend fifth grade [(the grade to which the challenged IEP related)]. The IEP modification at issue . . . has been replaced by an IEP for [the student]'s high school years. [The student]'s parents struck this agreement with a different entity than the [Defendant Board]. There is no continuing controversy. This school district has no authority to modify any IEP involving [the student].

89 F.3d at 468. In Jeppsen, the district court also concluded that the exception did not

9

apply, even though "it is likely both that [the district] will attempt to move [student's] placement in the future and that the change will be challenged by [parent]," because "it is impossible to predict whether a hearing officer will continue to support the [challenged] placement." 468 F. Supp. 2d at 112 n.5.

These cases support our conclusion that this case is moot. In each case, "[b]ecause the status quo remained in effect from the time [the parents] challenged the school district's attempt to modify the IEP, they de facto received the relief they originally sought . . . ; the modified IEP never took effect." Steven L., 89 F.3d at 468; accord Jeppsen, 468 F. Supp. 2d at 111–12. And, in each case, there was no evidence that the asserted IDEA violation was likely to occur again. Steven L., 89 F.3d at 468 ("This school district has no authority to modify any IEP involving [student]."); Jeppsen, 468 F. Supp. 2d at 112 n.5 ("[I]t is likely that [student's] IEP will change in the future, thus, it is impossible to predict whether a hearing officer will continue to support the [challenged] placement.").

Each of those facts is present in this case. By operation of the stay-put provision, Steven remained at Alpine for the 2016–2017 schoolyear and, we assume, he has continued to remain there. And, although the District asserts that Mother "almost certainly will challenge" Steven's December 4, 2018 IEP, Aplt. Reply at 5, nothing indicates that, even if she does challenge it, her challenges will be of the same procedural nature as those she brought in this case. A discussion of Honig, on which the District relies in support of its capable-of-repetition argument, clarifies this point.

In Honig, two students eligible for special education because of emotional

10

disturbance challenged indefinite suspensions by their school district. 484 U.S. at 312–13. Each student had engaged in "violent and disruptive conduct," but it was undisputed that the students' conduct was "related to their disabilities." Id. at 312. The Supreme Court concluded that the case was moot for one student, who was twenty-four and no longer IDEA-eligible. Id. at 318. The other student, however, was twenty, had not completed high school, and was therefore still entitled to a FAPE. Id. The Court concluded that the twenty-year-old student's claims were not moot because of his "continued eligibility for educational services under [the IDEA], the nature of his disability, and [the school district's] insistence that all local school districts retain residual authority to exclude disabled children for dangerous conduct." Id. at 318–19 (footnote omitted). This conclusion relied on the "inextricable link between the student's violent behavior and the challenged policy of exclusion." Brown v. Bartholomew Consol. Sch. Corp., 442 F.3d 588, 599 (7th Cir. 2006). Given the nature of the student's disability and the school district's assertion that it could unilaterally refuse to provide educational services to the student, the Supreme Court had "little difficulty concluding that there [wa]s a 'reasonable expectation,' that [the student] would once again be subjected to" the precise action challenged in that case, and it therefore concluded that his claim was not moot. Honig, 484 U.S. at 319–20 (quoting Murphy, 455 U.S. at 478).

The certainty of the continued dispute is not present here as it was in Honig. Even assuming the District is correct that Mother "almost certainly will challenge" Steven's new IEP, Aplt. Reply at 5, there is no reason to conclude—must less a demonstrated probability—that any subsequent IDEA challenge will be premised on the same

11

procedural shortcomings by the District that Mother challenges in this case.[4]  Mother's

challenges to Steven's 2016–2017 IEP were based on specific actions that she alleged the

District did not take in relation to Steven's 2016–2017 IEP.  As relevant on appeal, she

challenged the District's failure to (1) have a staff member from the new placements

proposed by the District (Roundup and the SOE) observe Steven at Alpine, (2) utilize a

neutral facilitator for Steven's IEP meeting, and (3) adequately identify Steven's

proposed educational placement.  Nothing suggests that these alleged procedural failures

will be at issue in any subsequent IDEA challenge Mother brings.[5]  If we decided now,

more than three years after the challenged actions, whether those alleged failures

---

[4] In fact, the District's assertions about what happened in the December 2018 IEP meeting indicate that the challenges Mother brings to Steven's new IEP likely will <u>not</u> be of the same nature as those she brought in this case.  The District stated in briefing that during Steven's 2018 IEP meeting, "[t]he IEP team determined and proposed that [Steven] be educated at his neighborhood high school, Sierra High School in its The Autism Program."  Aplt. Reply at 5.  Therefore, Mother's argument in this case that the IDEA required the District to identify Steven's placement as either COLA and LIBERTY (not merely the SOE) seems unlikely to be at issue in any challenge Mother may bring to Steven's most recent IEP.

[5] It is true that the parties have been involved in IDEA-related disputes before, and that Mother has consistently opposed the District's attempts to place Steven somewhere other than Alpine.  And in some circumstances, ongoing disagreement could satisfy the capable-of-repetition exception to mootness.  See, e.g., Jenkins v. Squillacote, 935 F.2d 303, 308 (D.C. Cir. 1991) (concluding that an IDEA claim was not moot when "both litigants readily agreed that the question of the degree of specificity required of the District in providing notice to parents under the IDEA is . . . . reasonably likely to be a recurring legal question with respect to the District's educational plans for the very pupil whose parents are now before this court").  But the only IDEA claims at issue on appeal are the District's alleged procedural violations in creating Steven's 2016–2017 IEP.  And although it is possible that the District might again create an IEP with the same alleged deficiencies, the record does not contain a "demonstrated probability" that it will.

12

amounted to a violation of the IDEA, we "would be issuing, in effect, an advisory opinion. Our decision would merely tell the parties who was correct . . . . It would do nothing to define the contours of the parties' continuing legal relationship under the IDEA such that future repetitions of the injury could be avoided." Brown, 442 F.3d at 599–600.

Despite arguing that the appeal is moot, Mother argues that the district court case "falls within the exception to the mootness doctrine." Aplee. Br. at 6. In support, she asserts that "the District continues to attempt to change Steven's educational placement in violation of the IDEA." Id. However, as discussed, the capable-of-repetition exception in the IDEA context looks at the likelihood that the specific IDEA violations alleged will be repeated. And the record does not indicate that it is reasonably likely that the District will again violate the IDEA in the specific ways that Mother alleges it did in this case. Because there is no "reasonable expectation" that the IDEA violations Mother asserts are likely to happen again, the capable-of-repetition exception does not prevent us from concluding that the district court action is also moot.[6]

Because the case is moot, we dismiss this appeal, vacate the district court's ruling, and remand with instructions to dismiss as moot. See Lewis, 494 U.S. at 482 (1990)

---

[6] As noted, Mother asserted both substantive and procedural IDEA violations in district court. As discussed, the record does not support a conclusion that the procedural violations are reasonably likely to occur again. And even if the record could support a conclusion that the substantive violations are reasonably likely to occur again, Mother does not argue that distinction, pointing only to the District's alleged procedural violations.

13

("Our ordinary practice in disposing of a case that has become moot on appeal is to vacate the judgment with directions to dismiss.").[7]

---

[7] Mother's argument that equity dictates that we affirm the district court's judgment and remand for a determination of attorney's fees has no support in the law. Under the IDEA, only the "prevailing party" can be awarded attorney's fees. 20 U.S.C. § 1415(i)(3)(B). A party can only be determined to prevail if it does so on the merits or with "the necessary judicial imprimatur," such as through a consent decree. Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 605 (2001). Because the case is moot, the court does not have jurisdiction to make a determination on the merits, and Mother cannot be a "prevailing party" under the IDEA.

Rio Grande Silvery Minnow v. Bureau of Reclamation, 601 F.3d 1096, 1129 (10th Cir. 2010), which Mother cites in support of her argument for attorney's fees, does not dictate otherwise. Silvery Minnow noted that "if the party seeking vacatur has caused mootness, generally we do not order vacatur." Id. That is not the circumstance here. This case has become moot by the passage of time and the nature of the IDEA violations at issue, not by any action by the District.