**PUBLISH**

**UNITED STATES COURT OF APPEALS**
**Filed 11/15/96TENTH CIRCUIT**

---

| | |
|---|---|
| JIMMY MCCLENDON, also known as | ) |
| Billy McClendon; HAROLD LUND; | ) |
| PETER SUMATKAKU; DAVID MICHAEL | ) |
| BAUER; CARL RAY LOPEZ; BRUCE | ) |
| DAVID MORAWE; THOMAS YOUNG; | ) |
| RUTHIE DURAN; DEBORAH LAVERA; | ) |
| JANELLE ROYBAL; DANETTE DIFIORI; | ) |
| MARIA SISNEROS; LARRY GREEN; | ) |
| BARTEL HALEY; MICHAEL COTE; JOE | ) |
| RAY HERRERA; JOSIE KRIENA; | ) |
| DEBBIE LUCERO; DAVID SHAWKIN; | ) |
| MARC A. GILLETTE; GEORGE | ) |
| CHAVEZ; ELISEO BACA; CLINT | ) |
| BARRAS; FRANCISCO MELENDEZ; | ) Nos. 96-2056 |
| SAMUAL HERROD; VINCENT | ) 96-2057 |
| PADILLA; CARL DUCKWORTH; | ) |
| JOSEPH W. ANDERSON; PAUL | ) |
| JOHNSON; FRED MALL; HECTOR | ) |
| LOPEZ; RICKY ROSE; HERBERT KING, | ) |
| SR.; JAMES PARKS; MICHAEL A. | ) |
| JOHNSON; JOHNNY VALLEJOS; JOE | ) |
| NEWBERRY; DARRYL CRAFT; | ) |
| ALBERT WILLY; WILLIAM P. JIMMY; | ) |
| AUGUSTINE TAPIA; RICHARD A. | ) |
| SMITH; ROBERT LOVATO; ROY | ) |
| WHATLEY; MARTY BEGAY; MARTIN | ) |
| VALDIVIA; TALLIE THOMAS; | ) |
| AUGUSTINE JACKSON; DONALD | ) |
| HALL; CARL SUR; STEVE ESQUIBEL; | ) |
| LONNIE WHATLEY; JAMES SAIZ; | ) |
| BRYON ZAMORA; ALLEN M. | ) |
| SAWYER; PATRICK BENNY ROMERO; | ) |
| RICHARD C. KOPECKY; PHILLIP | ) |
| SHUMATE; NELSON ROMERO; STEVE | ) |
| JOHNSON; BENNIE F. GARCIA; LOUIE | ) |

CHAVEZ; BRIAN SALAZAR; RICHARD ) 
GALLEGOS; LARRY STROUD; JAMES )
BURKS; BRAD FISCHER; AMIHON )
BACA; JEFF DILLOW; PETE MCQUEEN; )
MANUEL MARTINEZ; ARNOLD )
ANTHONY MAESTAS; JOHN HEWATT; )
and ALL OTHERS SIMILARLY SITUATED, )
    )

        Plaintiffs-Appellees and )
        Real Parties in Interest, )
    )

and EM; RL; WA; DJ; PS; NW, on )
behalf of themselves and all others similarly )
situated, )
    )

        Plaintiffs-Intervenors-Appellees )
        and Real Parties in Interest, )
    )
    )

and LAWRENCE A. JOHNSON, )
    )
        Intervenor. )
    )

v. )
    )

CITY OF ALBUQUERQUE; MARTIN )
CHAVEZ, Mayor of Albuquerque; )
COUNTY OF BERNALILLO; PATRICK )
BACA, Bernalillo County Commissioner; )
ALBERT VALDEZ, Bernalillo County )
Commissioner; EUGENE GILBERT, )
Bernalillo County Commissioner; )
BARBARA SEWARD, Bernalillo County )
Commissioner; JACQUELYN SCHAEFER, )
Bernalillo County Commissioner; BILL )
DANTIS, Director, Bernalillo County De- )
tention Center; BERNALILLO COUNTY )
DETENTION CENTER; PAUL SANCHEZ; )
FRANK LOVATO; ERCELL GRIFFIN, )
Deputy Director, Bernalillo County )

Detention Center; MICHAEL SMITH, )
Lieutenant; JOHN VAN SICKLER, )
Lieutenant; WILL BELL, Officer; )
ALBERT CHAVEZ, Lieutenant; )
RICHARD FUSCO, Lieutenant; GEORGE )
FUENTES; DAVID BACA, Lieutenant; )
VICTOR HERNANDEZ; KEVIN D. )
SEVIR; JIM MASON, Dr.; BARBARA )
COLE; MARIA LUCERO; DAVID )
ROYSTON; FELIMON MARTINEZ, )
Captain; STANLEY LENTS; DOUGLAS )
ROBINSON; SEAL BARLEY; LYNN )
KING; DAVE SHERMAN; BRIAN )
MASER; JOHN DOES, Employees of )
Bernalillo County Detentention Center, )
  )
      Defendants-Appellants )
      and Petitioners, )
  )
v. )
  )
THE UNITED STATES DISTRICT COURT )
FOR THE DISTRICT OF NEW MEXICO, )
  )
      Respondent. )

---

On Petition for Writ of Prohibition and on
Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CIV-95-24-MV)

---

Jeffrey L. Baker, The Baker Law Firm, Albuquerque, New Mexico, for
Defendants-Appellants and Petitioners.

Peter Cubra, Albuquerque, New Mexico, and Elizabeth E. Simpson, Tomita &
Simpson, P.C., Albuquerque, New Mexico (Nancy Koenigsberg, Protection &
Advocacy System, Albuquerque, New Mexico, with them on the brief), for

Plaintiffs-Intervenors-Appellees and Real Parties in Interest.

Anthony Ayala, Albuquerque, New Mexico, for Plaintiffs-Appellees and Real Parties in Interest, did not file a brief or present argument.

---

Before **SEYMOUR**, Chief Judge, **LOGAN** and **LUCERO**, Circuit Judges.

---

**SEYMOUR**, Chief Judge.

This appeal arises out of a class action brought on behalf of all present and future residents of the Bernalillo County Detention Center (BCDC) against the City of Albuquerque, Bernalillo County, and City and County officials responsible for operating the BCDC. Plaintiffs alleged that conditions at the BCDC were unconstitutional due primarily to extreme overcrowding. The parties entered into a partial settlement agreement addressing this problem. Defendants appeal an order that was issued by the district court in the course of implementing a modification of this agreement. We dismiss the appeal as moot.

I.

Plaintiffs asserted that the severe overcrowding at the BCDC raised constitutional problems with respect to many aspects of the operation of the facility, including health, sanitation, and security. On August 23, 1995, the district court entered a preliminary injunction under which a plan proposed by defendants to reduce the jail population would be implemented. The court's order specifically noted the cooperation of defendants. In granting the injunction, the court found that the existing facility was designed to house a population of 683 and had a bed capacity of 752. The daily resident population averaged 990, however, and had at times reached 1100. The court further found that when the bed capacity was exceeded, inmates slept on stack-a-bunks, mattresses placed on

the concrete floor, and on the concrete floor directly. Accordingly, the court imposed a population cap to be phased in by January 1, 1997. The court acknowledged defendants' past efforts to address the problems resulting from the overcrowding and set out three additional steps proposed by defendants for reducing the population: the construction of additional temporary housing; the expansion of the BCDC into additional permanent facilities; and the implementation of a Matrix Release System (MRS) providing for the supervised release of prisoners if necessary. Without deciding whether the overpopulation rose to the level of a constitutional violation, the court determined that the requirements for a preliminary injunction were satisfied and ordered numerous changes to address violence and health and safety hazards in addition to the population reduction. On September 7, 1995, the parties entered into a partial settlement agreement in which they stipulated to conversion of the August 23 order to a permanent injunction and to retention by the court of jurisdiction to enforce and/or modify the injunction.

Defendants informed the court in October that the mayor of Albuquerque opposed the use of the MRS and that it might no longer be a viable option for reducing the jail population. The court, in turn, directed defendants to file a motion to modify the stipulated order if they were concerned about their ability to use the agreed-to reduction system. Defendants did not file a motion to modify.

At a November 17 status conference, defendants stated that, as an alternative to using the MRS, they intended to renovate a city-owned facility called Montessa Park to provide temporary inmate housing. The court was sympathetic to defendants' dilemma and informed them that the proposed alternative housing would be allowed to replace the required MRS plan if the facilities were habitable and met constitutional standards. The court suggested that defendants allow plaintiffs' counsel to tour Montessa Park and that counsel inform the court if they had any concerns. Defendants' counsel agreed to this suggestion and assured the court that plaintiffs would be given any information they wanted and that inspection tours would be arranged. At plaintiffs' request, the court toured both Montessa Park and proposed facilities in the basement of a state court building and noted that both sites were habitable. Shortly thereafter defendants began to use both facilities.

In March 1996, local law enforcement authorities stepped up activities, leading to an increase in arrests and a corresponding swell in the inmate population. On Thursday, March 21, defendants notified the court that they had exceeded the population cap at BCDC the previous weekend and expected to do so again the following weekend. The court held a hearing on March 22, at which the court expressed disapproval both of defendants' failure to address the anticipated population swell until the last minute and their failure to inform the

court until the crisis was at hand. The jail director testified that he was looking at all different types of alternative housing, including the National Guard Armory, tents, warehouses, and airport hangars. The court determined that the only available option to reduce immediately the population was the use of tents as proposed by defendants. The court ordered that any proposed site would have to be certified by the fire marshal, that plaintiffs' counsel were to be given the opportunity to inspect the site, and that the parties were to promptly notify the court of any other options that might arise to avoid releasing prisoners under the MRS.

During a telephone hearing on Sunday, March 24, the parties and the court agreed that the tents could not be used over the weekend due to the extremely cold weather. At a status hearing on Monday, the court found that defendants had violated the injunction by exceeding the population cap at the BCDC during the two previous weekends, and by housing inmates over the past weekend in an unauthorized and unapproved trailer near the dump and in an unauthorized and unapproved warehouse called Montessa II, which the court found was not safe, secure, or adequate on the basis of the jail director's testimony. The court indicated its displeasure with defendants' failure to apprise it during the Sunday hearing of the plan to use these facilities, and with defendants' failure to provide either plaintiffs or the court an opportunity to tour them. The court stated that it

would tour the warehouse when informed by defendants that it was suitable for inmates, and ordered the inmates housed there to be returned to BCDC. Finally, the court ordered once again that defendants comply with the injunction to which they had agreed.

Defendants then requested and received an emergency stay of only that portion of the district court's orders which they described as requiring court inspection prior to the use of temporary housing alternatives to implementation of the MRS. We now have that issue before us.

The pleadings filed with this court reveal that since the district court's March orders, defendants have opened a 300-bed overflow jail facility, that they have met the scheduled population caps, and that they have voluntarily allowed inspection of temporary facilities by counsel for plaintiffs. As defendants set out in their reply brief, "[i]n less than a year, despite obstacles, Defendants have reduced the population of the BCDC's existing main facility by almost 300 inmates, and provided safe, secure and adequately staffed alternative housing for inmates by building a new Westside jail facility and refurbishing additional sites." Appellants Reply Br. at 2. Accordingly, we asked for supplemental briefing addressing whether we should dismiss this appeal as moot.

II.

Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction. Beattie v. United States, 949 F.2d 1092, 1093 (10th Cir. 1991). This requirement exists at all stages of federal judicial proceedings, and it is therefore not enough that the dispute was alive when the suit was filed; the parties must continue to have a personal stake in the outcome. Id. Because mootness is a matter of jurisdiction, a court may raise the issue sua sponte. Johnson v. Riveland, 855 F.2d 1477, 1480 (10th Cir. 1988). When a party seeks only equitable relief, as here, past exposure to alleged illegal conduct does not establish a present live controversy if unaccompanied by any continuing present effects. Beattie, 949 F.2d at 1094. In these circumstances, the party must "'demonstrate a good chance of being likewise injured in the future.'" Id. at 1093 (quoting Facio v. Jones, 929 F.2d 541, 544 (10th Cir. 1991)). Consequently, we must look beyond the initial controversy and decide whether the present dispute is sufficiently immediate and real. Id. at 1094.

The material filed with this court relevant to the issue of mootness reveals the following undisputed facts. Defendants have afforded plaintiffs' counsel opportunities to inspect the temporary sites that defendants sought to use on an emergency basis in March 1996. In addition, plaintiffs assert that the challenged

-10-

order is most appropriately read as covering only the inspection of the emergency interim facilities at issue during the March 1996 population crisis. To that extent, the matter is clearly moot.

Moreover, subsequent to the district court's March orders, defendants opened a new 300-bed detention facility. Although this new facility is now apparently at or near capacity, the already-inspected Montessa I and Montessa II facilities are available and together provide an additional 246 beds. The last phased population reduction of the BCDC under the settlement agreement resulted in the housing of at most sixty inmates in the Montessa facilities. By the time the final required reduction occurs in January 1997, the expansion of the new facility from 300 to 400 beds should be completed. The availability of these additional 100 beds, plus the 246 beds provided by the Montessa facilities, demonstrates that the possibility of an emergency situation again arising requiring the use of uninspected temporary emergency facilities is remote and speculative. Thus, even if the district court's challenged order were meant to extend beyond the emergency situation in which it arose, the lack of an immediate and real dispute renders this appeal moot. See, e.g., Doty v. County of Lassen, 37 F.3d 540, 544 (9th Cir. 1994) (opening of new jail facility mooted dispute over imposition of population caps in old jail); Elston v. Talladega County Bd. of Educ., 997 F.2d 1394, 1424 (11th Cir. 1993) (transfer of students to newly opened school mooted

challenge to reassignment of students at old school).

In order to find a live controversy, we would have to assume that defendants will again close their eyes to the anticipated numbers of jail residents, fail to plan in advance for them, and violate the settlement agreement. We decline to so speculate. Accordingly, we hold that the appeal is moot.

III.

We turn now to the disposition of the district court's March orders and the stay of those orders in light of our determination that the appeal is moot. "When causes beyond the appellant's control make a case moot pending appeal, a federal appellate court generally should vacate the judgment below and remand with a direction to dismiss." Otasco, Inc. v. Mohawk Rubber Co. (In re Otasco, Inc.), 18 F.3d 841, 843 (10th Cir. 1994) (citations omitted). "'That procedure clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance' and prevents the moot judgment 'from spawning any legal consequences.'" Marc Dev., Inc. v. FDIC, 12 F.3d 948, 949 (10th Cir. 1993) (en banc) (quoting United States v. Munsingwear, 340 U.S. 36, 40-41 (1950)). When, as here, prior rulings become moot through circumstances attributable to one of the parties and vacatur is considered by the court on its own motion, we "will determine whether vacatur

. . . is appropriate on the basis of the particular circumstances." Oklahoma Radio Assocs. v. FDIC, 3 F.3d 1436, 1444 (10th Cir. 1993); see also U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 115 S. Ct. 386, 392-93 (1994).

The circumstances here are certainly unusual. The district court order was entered during the court's attempt to accommodate defendants, who had undisputedly violated the settlement agreement by exceeding the population cap at the BCDC. Defendants, who appealed the district court order, have since voluntarily permitted inspections, and likely have ample beds to meet the last BCDC population cap set for January 1997. Moreover, it is defendants' actions in complying with the settlement agreement by creating adequate temporary space and opening a new facility that have rendered this appeal moot.

Although defendants are, in effect, responsible for mooting this appeal, we are persuaded we should nevertheless order that those portions of the district court orders from which defendants appeal be vacated. This is clearly not a case in which a defendant has manipulated the judicial process by deliberately aborting appellate review to avoid a decision on the issues. Rather, defendants' conduct in complying with the settlement agreement constitutes responsible governmental conduct to be commended. See American Library Ass'n v. Barr, 956 F.2d 1178, 1187 (D.C. Cir. 1992) (characterizing Congress's action in mooting case by passing legislation as responsible lawmaking). Under these circumstances, we are

persuaded that defendants should not bear any untoward consequences from their inability to contest the district court's March orders on appeal.  See Otasco, 18 F.3d at 843 (mooted but unvacated district court order continues to have preclusive effect).

Accordingly, we dismiss this appeal as moot.  We remand this case to the district court with directions to vacate those portions of its oral orders of March 22 and March 25 memorialized in writing on April 15, 1996, that prohibited defendants from using alternative facilities to house jail inmates on a temporary basis without first permitting counsel for plaintiffs to inspect the proposed facilities and obtaining district court approval prior to their use.[1]

---

[1]Having ordered the district court to vacate the orders appealed from, we vacate the stay order, McClendon v. City of Albuquerque, 79 F.3d 1014 (10th Cir. 1996), as well.  See Honig v. Students of Cal. Sch. for the Blind, 471 U.S. 148 (1985) (preliminary injunction order vacated when propriety of that relief rendered moot); University of Texas v. Camenisch, 451 U.S. 390, 398 (1981) (same); Walker v. Lockhart, 678 F.2d 68, 70 (8th Cir. 1992) ("In ruling on a request for an injunction pending appeal, the court must engage in the same inquiry as when it reviews the grant or denial of a preliminary injunction.").