**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 14, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

NATHAN M., a minor, by and through his
parents and next friends, AMANDA M.,

    Plaintiffs - Appellants,

v.

HARRISON SCHOOL DISTRICT NO. 2,

    Defendant - Appellee.

------------------------------

COLORADO ASSOCIATION OF
SCHOOL BOARDS; KANSAS
ASSOCIATION OF SCHOOL BOARDS;
NATIONAL SCHOOL BOARD
ASSOCIATION; NEW MEXICO
SCHOOL BOARDS ASSOCIATION;
OKLAHOMA STATE SCHOOL
BOARDS ASSOCIATION; UTAH
SCHOOL BOARDS ASSOCIATION;
WYOMING SCHOOL BOARDS
ASSOCIATION,

    Amici Curiae.

No. 19-1008

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:18-CV-00085-JLK)**
_____

Jack D. Robinson, Spies, Powers & Robinson, P.C., Denver, Colorado, for Plaintiff−Appellant.

John R. Stanek (William K. Dude with him on the briefs), Anderson, Dude & Lebel, P.C., Colorado Springs, Colorado, for Defendant−Appellee.

Francisco M. Negrón, Jr., Chief Legal Officer, National School Boards Association, Alexandria, Virginia, and W. Stuart Stuller, Caplan and Earnest, LLC, Boulder, Colorado, filed a brief for Amici Curiae National School Boards Association, Colorado Association of School Boards, Kansas Association of School Boards, New Mexico School Boards Association, Oklahoma State School Boards Association, Utah School Boards Association, and Wyoming School Boards Association, in support of Harrison School District No. 2.

———————————————————————

Before **TYMKOVICH**, Chief Judge, **PHILLIPS**, and **McHUGH**, Circuit Judges.

———————————————————————

**McHUGH**, Circuit Judge.

———————————————————————

This case arises under the Individuals with Disabilities Education Act ("IDEA" or the "Act"). Amanda M. ("Parent"), the mother of Nathan M., a child with autism, challenges an Individualized Education Program ("IEP") developed with Harrison School District No. 2 ("the District") that proposed removing Nathan from Alpine Autism Center (a private, autism-only facility) and placing him in Otero Elementary School (a public school). Nathan's mother contends the school district did not comply with numerous procedural requirements in developing the IEP and that the IEP itself failed to offer Nathan a "free appropriate public education" ("FAPE") as required by the Act.

Because the IEP at issue governed a schoolyear that has passed, and because the various IEP deficiencies alleged by Parent are not capable of repetition yet evading review, the case is moot.

## I.  BACKGROUND

### A.  *Factual History*

Nathan M. is a child diagnosed with autism spectrum disorder ("ASD") and attention deficit hyperactivity disorder ("ADHD"). As a child with a disability, Nathan is entitled to a FAPE under the IDEA. *Steven R.F. ex rel. Fernandez v. Harrison Sch. Dist. No. 2*, 924 F.3d 1309, 1310 (10th Cir. 2019); *see* 20 U.S.C. § 1412(a)(1)(A) (requiring states to provide a free appropriate public education to children with disabilities in order to qualify for federal funding). The IDEA guarantees the provision of a FAPE by mandating the development of an IEP: "a comprehensive plan prepared by a child's 'IEP team' (which includes teachers, school officials, and the child's parents)" through which "special education and related services are 'tailored to the unique needs' of a particular child." *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 994 (2017) (quoting *Bd. of Ed. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 181 (1982)).

Since 2012, in accordance with an IEP developed with the District, Nathan has attended the Alpine Autism Center ("Alpine") in Colorado Springs to receive special education supports and services in lieu of a public school. Alpine is a private program serving students with autism through a methodology known as "Applied

3

Behavior Analysis" ("ABA"), administered by employees supervised by Board Certified Behavior Analysts ("BCBAs") rather than certified teachers.

In April 2014, the District proposed removing Nathan from Alpine and placing him in a public elementary school, Otero Elementary ("Otero"). Nathan's parents objected to this decision and filed a complaint with the Colorado Department of Education. A Colorado State Complaint Officer ("SCO") found that the District had predetermined to remove Nathan from Alpine, thereby denying his parents the opportunity to meaningfully participate in the IEP process. The District declined to challenge this finding.

Nathan therefore remained at Alpine, and in February 2016 the District began a reevaluation of Nathan for the purpose of developing his new IEP. The District convened a pre-evaluation meeting attended by Parent, Parent's advocate, district employees, and various specialists in occupational therapy, speech, mental health, and administration. Parent provided an agenda for the meeting and received answers to her questions from members of the assessment team. No one from Alpine attended the meeting, and neither the District nor Parent invited anyone from Alpine to attend. At this pre-evaluation meeting, Parent consented to a series of assessments related to Nathan's "cognition, academic skill development, social/emotional/behavioral development, adaptive skill development (geared to ASD), speech/language development, motor skills, and sensory processing." App. Vol. 1 at 40.

The District held its first IEP team meeting on April 19, 2016. Parent, her advocate, and other members of the IEP team attended, but no representative from

Alpine did. The IEP team confirmed Nathan's continuing eligibility for a FAPE as a child with ASD[1] and fielded Parent's questions over the course of two and a half hours. After the meeting concluded, Parent had more questions about Nathan's evaluation, so a school district official held an individual meeting with her, lasting over two hours, during which the official attempted to answer Parent's questions.

A second two-and-a-half hour IEP team meeting occurred on May 19, 2016. Although Parent invited members of the Alpine staff to attend, they declined to do so. Parent provided an agenda for this meeting and expressed her view that the team would have made more progress had Alpine staff been in attendance. The IEP team addressed Nathan's "reevaluation and what progress he would need to show to be able to succeed in a general education classroom." App. Vol. 1 at 42.

At a third meeting, on September 9, 2016, the IEP team worked from an agenda created by a neutral facilitator designed to address Parent's issues with Nathan's IEP, as well as input from the District. Members of Alpine attended and "had further discussion regarding the results of the reevaluation as well as [Nathan's] present levels at Alpine." App. Vol. 1 at 43. The meeting lasted three hours.

The IEP team met for a fourth time on November 11, 2016. Parent, two of Parent's advocates, representatives from Alpine, and District staff attended the three-hour meeting, which was more "contentious and emotional than other meetings." App. Vol. 1 at 43–44. After a discussion of Nathan's current levels of performance,

---

[1] Parent did not disclose Nathan's ADHD diagnosis to the District during the development of the 2016 IEP.

the team formulated goals for Nathan and acceded to Parent's request for a one-on-one paraprofessional aide to support Nathan's academic and behavioral needs. Parent also requested an Independent Educational Evaluation ("IEE") for Nathan because, in her view, the District's evaluation was not adequate.[2] A fifth and final meeting "convened on December 13, 2016, and lasted more than four hours." App. Vol. 1 at 44. All IEP team members attended, along with employees of Alpine. The team updated Nathan's educational goals, responded to Parent's questions, and discussed the comparative advantages and disadvantages of placing Nathan at Alpine or Otero.

The District then proposed placing Nathan at Otero, within Otero's Autism Program. At Otero, Nathan would be provided a full-time, one-on-one paraprofessional and "extensive accommodations and modifications addressed to his unique educational needs." App. Vol. 1 at 45. Nathan would not be transitioned to Otero immediately, but "would be supported during the initial transition from Alpine with a blending of his day at Alpine and Otero." App. Vol. 1 at 45. Depending on Nathan's success within Otero's Autism Program, Nathan would eventually join Otero's Communications and Social Development program "geared toward students on the higher functioning end of the autism spectrum." App. Vol. 1 at 45. The

---

[2] An IEE was ultimately completed by Dr. Elizabeth Bruno on October 23, 2017. It was unavailable to either the IEP team or the ALJ, but the district court received and considered the IEE as additional evidence.

District memorialized its proposal in an IEP Document (the "2016 IEP") and a behavior intervention plan ("BIP").[3]

Parent rejected the IEP and filed a state complaint with the Colorado Department of Education.

## B. *Procedural History*

Upon receiving Parent's complaint, an SCO found that the District had failed to develop the 2016 IEP in accordance with the IDEA and ordered the District to resume Nathan's placement at Alpine. In response, the District filed a due process complaint arguing that it had offered Nathan a FAPE with the 2016 IEP in the "least restrictive environment" ("LRE") as mandated by the IDEA. Parent filed a counterclaim, alleging the various procedural and substantive violations of the IDEA discussed in detail below.

An ALJ for the Colorado Department of Education convened an evidentiary hearing on the 2016 IEP attended by the District, Parent, Parent's advocate, and various witnesses. At this evidentiary hearing, held over the course of five days, the ALJ heard extensive testimony from members of the IEP team, the IEP team's neutral facilitator, and experts for both Parent and the District. The ALJ also received dozens of exhibits from both parties. The ALJ's decision provides a comprehensive

---

[3] Broadly speaking, a "behavior intervention plan," or BIP, is a plan designed to implement the IDEA's requirement that an IEP team, "in the case of a child whose behavior impedes the child's learning or that of others, consider the use of positive behavioral interventions and supports, and other strategies, to address that behavior." 20 U.S.C. § 1414(d)(3)(B)(i).

summary of the hearing's proceedings and reaches thoughtful and well-reasoned conclusions regarding the District's compliance with the IDEA. Ultimately, the ALJ concluded the "District met its burden of establishing that the [2016 IEP] represented an offer of [a] FAPE to [Nathan] as required under the [IDEA]" and "[Parent] failed to meet [her] burden of establishing that [Nathan] was denied [a] FAPE as a result of procedural violations alleged in the development of the IEP." App. Vol. 1 at 62.

Parent appealed the ALJ's decision to the district court. She argued (1) the District had committed various procedural and substantive IDEA violations resulting in the denial of a FAPE to Nathan, and (2) the District had predetermined to place Nathan in Otero instead of Alpine. The district court reviewed the administrative record, including the transcript of the ALJ hearing, as well as additional evidence, before upholding the ALJ's decision in full. The court noted that the ALJ had correctly applied the substantive standard governing FAPEs as articulated in *Endrew F.*, 137 S. Ct. at 1002, which requires Nathan's IEP to be "reasonably calculated to enable [Nathan] to make progress appropriate in light of his circumstances."[4] After

_____

[4] Parent argues that the ALJ applied an incorrect standard in assessing whether the IEP provided a FAPE, stating "the ALJ held that '[T]he school district's obligation [to Nathan] extends only so far as to provide a *basic floor of opportunity* consisting of specialized instruction and related services that are individually designed to accord *some educational benefit*." Aplt. Br. at 25 (quoting App. Vol. 1 at 56). But a fair reading of the ALJ's decision reveals the ALJ held no such thing. In the passage quoted by Parent, the ALJ explained the Supreme Court's decision in *Bd. of Ed. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176 (1982). As the ALJ expressly recognized, the Supreme Court later clarified that an "educational program must be appropriately ambitious in light of a student's circumstances and provide the student with the chance to meet challenging objectives." App. Vol. 1 at 56 (citing *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct.

8

making extensive factual findings by a preponderance of the evidence, the district court explained its decision as follows:

> The emphasis at Alpine has been on behavioral intervention. Nathan has significant behavioral patterns that obstruct his ability to learn, including a short attention span, frequent distraction, physical resistance and aggression. Parent has legitimate concerns as to the adequacy of the District's functional behavioral assessment and the ability of the staff at Otero to intervene and re-direct negative behaviors. The deficiency at Alpine is in learning instruction. There are no certified teachers on the Alpine staff and Nathan has made little academic progress, particularly in writing. The other deficiency is that there is no opportunity for him to interact with children making normal progress. . . . That is the prime difference between Alpine and Otero. There are no nondisabled children among the 27 or so children at Alpine. At Otero Nathan would have the opportunity to participate with non-disabled students at lunch, music, art and extracurricular activities as well as in science and social studies. The science may particularly be appropriate to Nathan's interest as identified by Parent. It may be that Otero will not be able to achieve the goals it has set out in the IEP. In that case a different IEP must be developed. The transition will be difficult. The District has planned that this transition be incremental with some time in both schools. It may also be expected that a new environment will have a positive effect opening Nathan to new experiences. What the law requires is that an IEP provide a reasonable plan to provide educational opportunity in a least restrictive environment. This the District did.

App. Vol. 2 at 176, 184–185. Parent timely appealed, reasserting the various procedural and substantive IDEA violations she argued before the district court.

After the appeal had been fully briefed, we requested supplemental briefing from the parties on mootness in light of *Steven R.F.*, 924 F.3d at 1316, which held moot a similar IEP challenge because the IDEA violations alleged by the parent there

---

988 (2017)). Indeed, immediately before the passage misleadingly quoted by Parent, the ALJ stated that "[t]o meet its substantive obligation under the IDEA, a school must offer [an] IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Id.* at 55 (citing *Endrew F.*, 137 S. Ct. at 999). This standard is correct.

were not capable of repetition but evading review. The parties' supplemental briefing explains some of what has happened to Nathan since this case began in 2016. In 2019, the District completed a statutorily mandated triennial review of Nathan and made adjustments to his IEP and BIP. *See* 20 U.S.C. § 1414(a)(2). Because Nathan has since matriculated from elementary school to middle school, the IEP now recommends he be placed in the Autism program at Mountain Vista Community School instead of the program at Otero. The record does not show whether Parent still opposes this placement.

## II. DISCUSSION

### A. *Mootness*

Our jurisdiction under Article III extends only to "actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988); *see McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996) ("[T]he existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction."). If an actual controversy ceases to exist at any stage of litigation, the case has become moot and should be dismissed. *Fischbach v. N.M. Activities Ass'n*, 38 F.3d 1159, 1160 (10th Cir. 1994) ("Generally, the actual controversy between the parties 'must exist at [all] stages of appellate or certiorari review, and not simply at the date the action is initiated.'" (quoting *Roe v. Wade*, 410 U.S. 113, 125 (1973))).

The District and Parent do not dispute that Nathan's case is technically moot. Parent initiated this challenge in response to Nathan's 2016 IEP, which "governed a schoolyear that has passed." *Steven R.F.*, 924 F.3d at 1313. Any controversy over

10

where Nathan should spend the 2016–17 schoolyear was resolved long ago by operation of the IDEA's "stay-put" provision, which maintains a child's then-current placement during the pendency of an IEP challenge. 20 U.S.C. § 1415(j) (providing that a "child shall remain in [his] then-current educational placement" "during the pendency of any proceedings conducted pursuant to this section"). Nathan has thus remained at Alpine since 2016, effectively giving Parent the relief she originally sought. Because our present decision about the 2016 IEP can have no effect "in the real world," *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1110 (10th Cir. 2010) (quotation marks omitted), Nathan's case appears to be moot.

"The Supreme Court has held, however, that certain cases which appear technically mooted, are in reality live controversies because they will recur and again evade review." *Taxpayers for the Animas-La Plata Referendum v. Animas-La Plata Water Conservancy Dist.*, 739 F.2d 1472, 1478 (10th Cir. 1984). Parent contends that her challenge falls within this narrow category of cases because it is "capable of repetition, yet evading review." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998). The capable-of-repetition-yet-evading-review exception to mootness applies in those "exceptional situations," *id.* (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)), when "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party would be subjected to the same action again." *Steven R.F.*, 924 F.3d at 1313 (alteration in original) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482

11

(1982)). As the party asserting the exception, Parent bears the burden of establishing that it applies. *See Ind v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1215 (10th Cir. 2015).

Like most parties challenging IEPs, Parent easily satisfies the first prong of the capable-of-repetition-yet-evading-review exception. IEPs are short-lived—lasting for only a single school year—and judicial review is not. *Rowley*, 458 U.S. at 186 n.9 ("Judicial review invariably takes more than nine months to complete, not to mention the time consumed during the preceding state administrative hearings."). This timing discrepancy virtually guarantees that an IEP will expire before its challenge reaches us. *See Sch. Comm. of Town of Burlington v. Dep't of Educ.*, 471 U.S. 359, 370 (1985) ("[T]he [IDEA] review process is ponderous. A final judicial decision on the merits of an IEP will in most instances come a year or more after the school term covered by that IEP has passed."); *Steven R.F.*, 924 F.3d at 1313 ("A one-year IEP is, by its nature, 'too short [in duration] to be fully litigated prior to its . . . expiration.'" (alterations in original) (quoting *Murphy*, 455 U.S. at 482)).

The second prong—"a reasonable expectation that the same complaining party would be subjected to the same action again"—presents a more difficult question. *See Murphy*, 455 U.S. at 482 (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam) (explaining that the "reasonable expectation" of repetition must be more than "a mere physical or theoretical possibility")). This difficulty stems, in part, from a lack of precision in our cases describing exactly *what* must be likely to recur.[5] In

---

[5] The D.C. Circuit laid out the variety of terms used by the Supreme Court in *People for Ethical Treatment of Animals, Inc. v. Gittens*, 396 F.3d 416, 421–22 (D.C.

12

*Fischbach*, we asked whether the complaining party would be "subjected to the action again." *Fischbach*, 38 F.3d at 1161 (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 377 (1979)). Then in *Wyoming v. U.S. Dep't of Agric.*, 414 F.3d 1207, 1212 (10th Cir. 2005), we asked the same question, but about potentially recurrent "conduct." We reframed the question again in *McKeen v. U.S. Forest Serv.*, 615 F.3d 1244, 1255–56 (10th Cir. 2010), which spoke in terms of an "issue" or an "alleged injury" that could be repeated, and in *Parker v. Winter*, 645 F. App'x 632, 635 (10th Cir. 2016) (unpublished) (quoting *Honig*, 484 U.S. at 319 n.6), asking whether a claimant had demonstrated that a recurrence of the "dispute" was more probable than not and whether the "controversy" was capable of repetition.

---

Cir. 2005) (second alteration in original):

> We use the words "issues or wrongs" [in formulating the capable-of-repetition exception] because Supreme Court opinions are not uniform in their description of exactly what must be repeatable in order to save a case from mootness. In the decision giving rise to the doctrine, the Court spoke of "short term orders [of an agency], capable of repetition, yet evading review." *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911). Later cases speak not of orders, but of repetition of the "controversy," *e.g., Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 594 n.6 (1999); *Norman v. Reed*, 502 U.S. 279, 288 (1992); *Int'l Org. of Masters, Mates & Pilots v. Brown*, 498 U.S. 466, 473 (1991), or "the questions presented," *Sosna v. Iowa*, 419 U.S. 393, 399–400 (1975). Other cases put the matter in terms of the plaintiff suffering the "same wrong again," *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 481 (1990); *Los Angeles v. Lyons*, 461 U.S. 95, 109, 111 (1983), or being subjected to the "same action again," *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975); *Spencer v. Kemna*, 523 U.S. 1, 17–18 (1998); *Lewis*, 494 U.S. at 481; *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curiam) (quoting *Weinstein*). One opinion, *Honig v. Doe*, 484 U.S. 305 (1988), uses several variations, *see id.* at 318 (same "deprivation"); *id.* at 319 n. 6 (same controversy); *id.* at 320 (same injury).

*Steven R.F.* recently clarified the target of our capable-of-repetition inquiry in IDEA disputes: "[T]he capable-of-repetition exception in the IDEA context looks at the likelihood that the *specific* IDEA violations alleged will be repeated." 924 F.3d at 1316 (emphasis added). Thus, confronting facts very similar to those before us now,[6] we held the mother of a disabled child had not satisfied the capable-of-repetition exception to mootness because she had raised "fact-specific" procedural challenges to an expired IEP, *id.* at 1314, and "nothing indicate[d] that . . . her [future] challenges [would] be of the same procedural nature as those she brought in this case," *id.* at 1315. Seizing on this language, Parent attempts to distinguish *Steven R.F.* and rescue Nathan's case from certain mootness by arguing that her appeal involves *substantive* violations of the IDEA, or "fundamental disagreements between the parties about what special education and related services and what educational placement and programming Nathan needs in order to receive a free appropriate public education." Aplt. Supp. Br. at 5–6. According to Parent, she and the District have a "reasonable expectation" of rehashing these fundamental, substantive disagreements every year, satisfying the mootness exception's second prong.

But Parent has learned the wrong lesson from *Steven R.F.* That case did not imply that alleging substantive violations of the IDEA will preserve our jurisdiction to decide a case that would have become moot had it involved only procedural

---

[6] Steven and Nathan have similar disabilities, attended the same private facility, Alpine, and their parents raised similar challenges to IEPs produced by Harrison School District No. 2 after the District attempted to place the children in public schools for the 2016–2017 schoolyear.

14

violations. Rather, *Steven R.F.* expressly reserved any question as to whether Steven's parent's substantive challenges to an expired IEP could satisfy the second prong of the capable-of-repetition exception. *See* 924 F.3d at 1316 n.6 ("*[E]ven if* the record could support a conclusion that the substantive violations are reasonably likely to occur again, [Steven's parent] does not argue that distinction . . . ." (emphasis added)). We *did not* hold, or even suggest, that the record supported such a conclusion.

Instead, *Steven R.F.* invariably demands specificity from the party articulating the "same action" that there is a "reasonable expectation" will recur. *Murphy*, 455 U.S. at 482; *see Steven R.F.*, 924 F.3d at 1314 ("Mother's challenges to Steven's 2016–2017 IEP were based on *specific* actions that she alleged the District did not take in relation to Steven's 2016–2017 IEP." (emphasis added)); *id.* at 1315 ("[T]he capable-of-repetition exception in the IDEA context looks at the likelihood that the *specific* IDEA violations alleged will be repeated. And the record does not indicate that it is reasonably likely that the District will again violate the IDEA in the *specific* ways that Mother alleges it did in this case." (emphases added)); *id.* at 1314 ("Even assuming . . . a reasonable expectation of future IDEA disputes between the District and Mother, it does not satisfy the mootness exception in this case because the procedural challenges Mother raises are *fact-specific* to Steven's 2016–2017 IEP proceedings." (emphasis added)).

Nothing in *Steven R.F.* supports Parent's argument that we require less specificity when faced with substantive rather than procedural challenges. To the

15

contrary, *Steven R.F.* teaches that we demand specificity in all cases to ensure that our disposition of a technically moot but capable-of-repetition controversy will help to "define the contours of the parties' continuing legal relationship under the IDEA such that future repetitions of the injury could be avoided." *Id.* at 1316 (quoting *Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 599–600 (7th Cir. 2006)). Put another way, "the 'wrong' that is, or is not, 'capable of repetition' must be defined in terms of the *precise controversy* it spawns." *People for Ethical Treatment of Animals, Inc. v. Gittens*, 396 F.3d 416, 422 (D.C. Cir. 2005). "One function of the 'capable of repetition' doctrine is to satisfy the Constitution's requirement . . . that courts resolve only continuing controversies between the parties," and "[t]hat function cannot be fulfilled unless the alleged 'wrong' is put in terms of the *legal questions* it presents for decision." *Id.* at 422–23 (emphasis added).

Pulling these various threads together, to satisfy the second prong of the capable-of-repetition exception to mootness, Parent bears the burden of establishing that it is "reasonably likely that the District will again violate the IDEA in the specific ways that [she] alleges it did in this case." *Steven R.F.*, 924 F.3d at 1316; *see Ind*, 801 F.3d at 1215 (explaining that that party asserting capable-of-repetition exception bears burden of proof). She may not generally allege that the District will deny Nathan a FAPE at some point in the future. There must exist a "continuing controvers[y]" between the parties presenting "legal questions" for resolution, *Gittens*, 396 F.3d at 422–23, ensuring that our decision on the merits will "define the contours of the parties' continuing legal relationship under the IDEA such that future

16

repetitions of the injury could be avoided." *Steven R.F.*, 924 F.3d at 1316 (quoting

*Brown*, 442 F.3d at 599–600).[7] A pattern of related but distinct and factually specific

controversies will not suffice because our resolution of one dispute will leave the

others unresolved and just as likely to occur in the future. *See Gittens*, 396 F.3d

at 424 ("[A] 'legal controversy so sharply focused on a unique factual context' w[ill]

rarely 'present a reasonable expectation that the same complaining party would be

subjected to the same actions again.'" (quoting *Spivey v. Barry*, 665 F.2d 1222,

1234–35 (D.C. Cir. 1981))).

Having laid out the relevant law and Parent's burden in asserting the capable-

of-repetition exception, we apply that law to the facts before us.

---

[7] For example, in *Honig v. Doe*, 484 U.S. 305, 312 (1988), two disabled students with a history of hostile and disruptive behavior challenged their proposed expulsion by a school district. The Court held the case capable of repetition yet evading review as to one student (who it was reasonable to expect would again engage in classroom misconduct) based on the state petitioner's urging that "local school districts retain unilateral authority under the EHA [the IDEA's predecessor statute] to suspend or otherwise remove disabled children for dangerous conduct." *Id.* at 321–23. Deciding *Honig* on its merits allowed the Court to resolve the legality of the school district's policy of unilaterally removing disabled students who engaged in disruptive behavior from public school. *See id.* at 323 (explaining Congress "very much meant to strip schools of the *unilateral* authority they had traditionally employed to exclude disabled students . . . from school"). Ultimately, the Court's decision in *Honig* "define[d] the contours of the parties' continuing legal relationship," *Steven R.F. ex rel. Fernandez v. Harrison Sch. Dist. No. 2*, 924 F.3d 1309, 1316 (10th Cir. 2019) (quoting *Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 599–600 (7th Cir. 2006)), by invalidating that policy. *Honig*, 484 U.S. at 323–24. Had the District here relied on a similar policy or blanket rule to eliminate Alpine as a possible placement for Nathan, Nathan likely could meet the capable-of-repetition exception. But here, the District determined Nathan's placement by examining the then-existing circumstances particular to Nathan's age, needs, and development.

**B.** *Application*

As was the case in *Steven R.F.*, Parent alleges a variety of procedural and substantive IDEA violations regarding Nathan's 2016 IEP. We do not decide whether these violations satisfy the capable-of-repetition exception's second prong "in gross," *cf. Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) (explaining "standing is not dispensed in gross"), but must consider "the likelihood that the *specific IDEA violations alleged* will be repeated" when applying the capable-of-repetition exception, *Steven R.F.*, 924 F.3d at 1316 (emphasis added). That is, when it comes to mootness, "[e]ach claim must stand or fall on its own." *Taxpayers for the Animas-La Plata Referendum*, 739 F.2d at 1479 n.2; *see Murray ex rel. Murray v. Montrose Cty. Sch. Dist. RE-1J*, 51 F.3d 921, 925 (10th Cir. 1995) (explaining that subsequent actions with respect to an IEP may "render[] moot certain issues before us, but does not render the entire case moot").

To begin, Parent makes no attempt to show that any alleged procedural violations of the IDEA are capable of repetition. Thus, Parent has seemingly waived any argument that the various procedural violations she alleges are not moot. But we need not decide these questions on waiver, or sort Parent's substantive claims from her procedural ones, because Parent has failed to carry her burden of showing that *any* of the alleged IDEA violations are likely to recur.

Parent alleges five separate IDEA violations: (1) the District predetermined Nathan's educational placement, (2) the District failed to review current evaluation data in developing Nathan's IEP, (3) the District failed to ensure the attendance of

18

Alpine staff at all IEP meetings, (4) the District failed to properly consider Nathan's behaviors and develop an adequate BIP for Nathan's IEP, and (5) Nathan's IEP failed to provide special education and related services necessary to allow Nathan to make progress appropriate in light of his circumstances. We evaluate whether each of these violations is likely to recur in turn, assuming for purposes of our analysis that Parent is correct on their merits. *See Baca v. Colo. Dep't of State*, 935 F.3d 887, 925 (10th Cir. 2019) ("In evaluating mootness, the court assumes the plaintiff will receive the relief that he requests in this litigation and then proceeds to determine whether there is a substantial likelihood that that relief will redress his asserted injury." (internal quotation marks and alteration omitted)).

With respect to (1) predetermination and (2) reviewing current evaluation data, Parent entirely fails to address why a "reasonable expectation" exists that the District will again commit these procedural violations. *See Steven R.F.*, 924 F.3d at 1313. We see no basis in the record for assuming, without any facts or even an allegation by Parent, that the District will again predetermine Nathan's placement or review outdated evaluation data. *See Ind*, 801 F.3d at 1215 (party asserting capable-of-repetition exception bears burden of proof); *see also Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 88 (2d Cir. 2005) ("A plaintiff must point to something more in the record to lift th[e] possibility [of repetition] beyond the speculative.").

Similarly, Parent does not allege that the District would again fail to (3) ensure the attendance of Alpine staff at IEP meetings. Even if we were willing to make this

19

assumption on Parent's behalf, the District affirmatively states in its supplemental briefing that it "assured both the Parent and Alpine participation at subsequent IEP meetings" in formulating Nathan's 2019 IEP, Aple. Supp. Br. at 8, and Parent does not contest this statement. *See Lillbask*, 397 F.3d at 88 (case moot where school district conceded parents' position).

Parent's alleged violations (4) and (5) suffer from a fatal vagueness. As set forth above, to satisfy the capable-of-repetition exception, Parent bears the burden of showing a "continuing controvers[y]" between the parties presenting "legal questions" for resolution. *Gittens*, 396 F.3d at 422–23. With respect to issue (4), Nathan's allegedly deficient BIP, Parent does not specify a *single* behavior that the District's BIP failed to consider, much less explain why it is likely that a future BIP will also fail to consider such behaviors. Parent's supplemental briefing merely states that "Nathan requires a 'strong behavioral program' (as provided) at Alpine." Aplt. Supp. Br. at 7. Again, even assuming the 2016 IEP lacked a "strong behavioral program," the District has explained that it reevaluated Nathan and adjusted his BIP in 2019. Parent makes no allegation that this new BIP contains a similar defect, and nothing indicates that this defect presents a "legal question" which we can resolve on appeal, *Gittens*, 396 F.3d at 422–23, instead of a fact-specific disagreement unlikely to recur in a recognizable form in a future IEP. *See id.* ("[A] 'legal controversy so sharply focused on a unique factual context' w[ill] rarely 'present a reasonable expectation that the same complaining party would be subjected to the same actions again.'" (quoting *Spivey*, 665 F.2d at 1234–35)).

20

Finally, Parent entirely fails to identify the "special education and related services" in issue (5) that Nathan's 2016 IEP lacked. Although Parent suggests "the dispute here is about Nathan's need for services from a [BCBA] and the need for [ABA]," Aplt. Supp. Br. at 7, Parent does not contest that Nathan's 2019 reevaluation updated the IEP's "goals, objectives and services with certain ABA methods under the participation of personnel with BCBA certifications." Aple. Supp. Br. at 8. The parties do not seem to dispute the propriety of ABA methods or the participation of BCBA personnel in Nathan's education.[8] To the extent the parties do disagree on, perhaps, the necessary degree of certain educational services or whether the precise services in a particular IEP will enable Nathan to make progress "appropriate in light of [his] circumstances," *Endrew F.*, 137 S. Ct. at 999, their dispute is fact-specific to his expired 2016 IEP.[9] *See Steven R.F.*, 924 F.3d at 1314 (holding the mootness

_____

[8] For example, a district employee testified before the ALJ that Otero has "ABA-specific training to our paraprofessionals within our autism programs not just within Otero but across the district." App. Vol. 4 at 525–26. And the ALJ concluded that Nathan's 2016 IEP "prescribed a methodology for reducing the occurrence of [targeted behaviors] or increasing the occurrence of preferred replacement behaviors" that is "consistent with the positive behavior supports characteristic of ABA" and indeed "similar to the principles . . . used with the Student at Alpine." App. Vol. 1 at 61.

[9] In this regard, Parent's exclusive reliance on *Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036 (5th Cir. 1989), which held a controversy over an expired IEP not moot because it was capable of repetition but evading review, is misplaced. In *Daniel R.R.*, the court articulated a precise controversy between the parties, i.e., whether the school district must mainstream a child "even if he cannot thrive academically in regular education." *Id.* at 1040. This legal controversy did not depend on the facts of a particular IEP, but on the parties' understanding of the IDEA's mainstreaming obligation. *Id.* at 1040–41. The District and Parent here, in contrast, do not clearly disagree on any of the IDEA's requirements, or even on the

21

exception not satisfied "because the procedural challenges Mother raises are fact-specific to Steven's 2016–2017 IEP proceedings").

Nothing in Parent's briefing hints at a "*precise controversy*" presenting "legal questions" for our decision.[10] *See Gittens*, 396 F.3d at 422–23 (emphasis added). Without any evidence of such a controversy, our ruling on the merits would disregard "the Constitution's requirement . . . that courts resolve only continuing controversies between the parties," *id.*, and we "would be issuing, in effect, an advisory opinion." *Brown*, 442 F.3d at 599. It would tell the parties who was right about Nathan's 2016 IEP, but nothing more, thus failing to ensure that "future repetitions of the [alleged] injury could be avoided." *Id.* at 600. This is especially true given that, since 2016, Nathan has matriculated from elementary to middle school, and the District now

---

kind of supports and services Nathan requires. And although they may have disagreed in 2016 on the *degree* of the supports required or offered at Otero as compared to Alpine, Parent has given us no reason to assume the same disagreement will be present in a future IEP.

[10] At oral argument, the District briefly suggested that whether Otero constitutes the LRE is a substantive issue that may be capable of repetition but evading review. *See L.B. ex rel. K.B. v. Nebo Sch. Dist.*, 379 F.3d 966, 975 n.13 (10th Cir. 2004) ("The IDEA's substantive provisions are violated if: (1) the school district fails to provide a child with a FAPE; *or* (2) a FAPE is provided, but *not*, to the maximum extent appropriate, in a least restrictive environment."). But Parent does not argue the 2016 IEP failed to place Nathan in the LRE; Parent argues the 2016 IEP did not offer Nathan a FAPE. *See* Reply Br. at 16 ("This case was never about 'least restrictive environment.' It is only about whether the 2016 IEP was reasonably calculated to provide Nathan a FAPE."). Thus, there is no controversy between the parties over the IDEA's LRE requirement with respect to Nathan's 2016 IEP. *See McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996) ("[T]he existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction.").

recommends he be placed in a different school from Otero—Mountain Vista Community School—which may have different capacities, offer different services, or present unique challenges to Nathan's continuing education and development. Nathan himself is older, and because his autism "presents an evolving set of challenges for educators," *id.* at 599, what was appropriate for him in elementary school may no longer be when he advances to middle school.

Although Parent and the District may continue to lock horns over Nathan's educational placement, their dispute has not sharpened into a specific legal controversy that this court is capable of resolving. Thus, our decision on the merits of Nathan's 2016 IEP could have no effect "in the real world," *Rio Grande Silvery Minnow*, 601 F.3d at 1110 (quoting *Wyoming*, 414 F.3d at 1212), and could do nothing to avoid future conflict, *Steven R.F.*, 924 F.3d at 1316. The case is therefore moot and not capable of repetition but evading review.[11]

### III.  CONCLUSION

For these reasons, we **VACATE** the district court's ruling and **REMAND** with instructions to dismiss the case as moot. *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472,

---

[11] We see little merit in Parent's contention that "[r]endering this case moot would eviscerate a significant right guaranteed to parents by the IDEA—the right to challenge the provision of a free appropriate public education and the educational placement of their child." Aplt. Supp. Br. at 10. First, the mootness doctrine sets constitutional limits on our jurisdiction that do not bend to accommodate statutory remedies. *See McClendon*, 100 F.3d at 867. Second, Parent *has* challenged Nathan's IEP, and successfully so—Nathan remains a student at Alpine.

482 (1990) ("Our ordinary practice in disposing of a case that has become moot on appeal is to vacate the judgment with directions to dismiss.").