**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 16, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ELIZABETH B., a minor, by and through
her parents and next friends, Donald B. and
Aileen B.,

     Plaintiff - Appellant,

v.

EL PASO COUNTY SCHOOL DISTRICT
11,

     Defendant - Appellee.

No. 19-1299
(D.C. No. 1:16-CV-02036-RBJ-NYW)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MORITZ**, and **CARSON**, Circuit Judges.
_____

     Elizabeth B. (Lizzie), acting through her parents, appeals the district court's

order affirming the decision of the administrative law judge (ALJ) and dismissing her

suit under the Individuals with Disabilities in Education Act (IDEA), 20 U.S.C.

§§ 1400–1482. For the reasons explained below, we affirm.

     Lizzie has multiple medical diagnoses, including epilepsy and autism. In 2015,

she was enrolled at Madison Elementary in the El Paso County School District.

While she was at Madison, the School District proposed an Individual Education Plan

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. But it may be cited for its
persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

(IEP) for Lizzie, which "is a written statement that sets forth the child's present performance level, goals and objectives, specific services that will enable the child to meet those goals, and evaluation criteria and procedures to determine whether the child has met the goals." *Ass'n for Cmty. Living in Colo. v. Romer*, 992 F.2d 1040, 1043 (10th Cir. 1993). The operative version of the IEP placed Lizzie at Madison part-time, with less than 40% of her time in a general-education classroom. The IEP also provided for 15 hours of special-education services per week, with additional hours for speech pathology, physical therapy, and occupational therapy. Lizzie's parents rejected the IEP and enrolled her full-time at the Alpine Autism Center, "a nonprofit organization specializing in the care and education of individuals with autism." App. vol. 1, 21.

Afterward, Lizzie's parents filed a complaint on Lizzie's behalf requesting that the School District reimburse them for the costs associated with Alpine. Following a due-process hearing, the ALJ approved the IEP and concluded that Lizzie and her parents were "not entitled to any relief." App. vol. 5, 1125. Later, the district court affirmed the ALJ. Lizzie and her parents appeal.

We first address the School District's position that we lack subject-matter jurisdiction because this appeal is moot. We can only resolve "actual, ongoing controversies," meaning that our judgment must have some real-world effect. *Nathan M. ex rel. Amanda M. v. Harrison Sch. Dist. No. 2*, 942 F.3d 1034, 1040 (10th Cir. 2019) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)). Here, the School District argues that our judgment would have no real-world effect because a Medicaid waiver

covered the Alpine tuition—therefore, Lizzie's parents cannot show damages. But at oral argument, counsel for Lizzie's parents represented that the Medicaid waiver did not cover all related expenses; in particular, it did not cover out-of-pocket transportation expenses. Counsel also noted that the complaint broadly requests "the costs associated with Lizzie's educational placement at Alpine." App. vol. 1, 13. We agree that the complaint requests all associated costs. And under the IDEA, such costs include transportation expenses. *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 31 (1st Cir. 2006) (observing that "courts have generally interpreted the IDEA as allowing reimbursement for" both tuition and related services); *see also* 20 U.S.C. § 1412(a)(10)(C)(i)–(ii) (noting school district's obligation to provide education and "related services"); 34 C.F.R. § 300.34(c)(16) (including transportation as "related services"). Thus, because the complaint seeks actionable reimbursement damages, this appeal is not moot.

We now turn to the merits of the appeal. When analyzing appeals under the IDEA, we apply "a modified de novo review, which entails an independent review of the evidence." *Thompson R2-J Sch. Dist. v. Luke P. ex rel. Jeff P.*, 540 F.3d 1143, 1150 (10th Cir. 2008) (quoting *T.S. v. Indep. Sch. Dist. No. 54*, 265 F.3d 1090, 1093 (10th Cir. 2001)). This means that we "look[] at the record of the administrative proceedings and decide[], based on a preponderance of the evidence, whether the requirements of the IDEA are met. In so doing, [we] must give 'due weight' to the [ALJ]'s findings of fact, which are considered prima facie correct." *L.B. ex rel. K.B. v. Nebo Sch. Dist.*, 379 F.3d 966, 973–74 (10th Cir. 2004) (citations omitted)

3

(quoting *Murray ex rel. Murray v. Montrose Cnty. Sch. Dist*., 51 F.3d 921, 927 & n.11 (10th Cir. 1995)). Additionally, Lizzie's parents bear the burden of showing that they are entitled to their requested reimbursement. *Thompson*, 540 F.3d at 1148.

The IDEA guarantees students with disabilities the right to "a free appropriate public education," or a FAPE. 20 U.S.C. § 1400(d)(1)(A). If the school district fails to provide a FAPE, then the IDEA permits parents to enroll their child in a private school and seek tuition reimbursement from the school district. 20 U.S.C. § 1412(a)(10)(C)(ii). To determine whether reimbursement is proper, we examine whether (1) "the public placement violated [the] IDEA" and (2) "the private[-]school placement was proper under the [IDEA]." *Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 15 (1993). Lizzie's parents contend that the School District violated the IDEA because the IEP does not provide her a FAPE; therefore, they reason, the Alpine placement is proper because Alpine would provide Lizzie a FAPE.

In support, Lizzie's parents first argue that the IEP failed to provide a FAPE because it did not incorporate a functional behavioral assessment and behavioral intervention plan. But, as the School District points out, the plain language of the IDEA does not require the School District to create any specific intervention plan. Instead, the IDEA only requires the School District to "*consider* the use of positive behavioral interventions and supports." 20 U.S.C. § 1414(d)(3)(B)(i) (emphasis added). Lizzie's parents do not rebut this plain language, nor do they dispute that the

4

School District considered these behavioral interventions but found them unnecessary.[1]

Relatedly, Lizzie's parents argue that the School District has a policy of only creating such assessments and plans if the student's behavior is especially challenging. But again, the plain language of the IDEA undermines this position. The IDEA only requires the School District to consider such interventions where the student's "behavior impedes the child's learning or that of others." *Id.* Here, although Lizzie's parents explain that Lizzie exhibits "maladaptive behaviors," they do not point to any evidence showing that these behaviors impeded her (or others') ability to learn. Aplt. Br. 5. And their failure to carry their burden on this point is dispositive. *See Thompson*, 540 F.3d at 1148. Further, as the district court observed, "[t]he testimony of seven [School] District witnesses who worked with Lizzie . . . all established that Lizzie's negative behaviors were not interfering with her ability to learn at school or to interact with other children." App. vol. 1, 37. For example, Lizzie's occupational therapist observed that Lizzie's maladaptive behaviors mostly occurred during unstructured time like recess and free time. But when Lizzie turned to "engaged activities," those behaviors abated. App. vol. 3, 515. Moreover, although the School District did not create a formal intervention plan, it did begin drafting a "tip sheet" for Lizzie's teachers that would help them identify and respond to any

---

[1] Lizzie's parents do point to a technical-assistance document from the Colorado Department of Education that requires a functional behavioral assessment and behavioral intervention plan in certain circumstances. But they do not explain why this document is authoritative given the plain language of the IDEA.

5

negative behaviors. App vol. 5, 1038. Accordingly, Lizzie's parents fail to show that the School District was required to incorporate a functional behavioral assessment and intervention plan into Lizzie's IEP.

Next, Lizzie's parents argue that the IEP fails to provide a FAPE because it did not require one-on-one applied behavioral analysis (ABA) from an ABA-certified instructor. "ABA methodology is a well-regarded form of treatment for children with autism that focuses on teaching behaviors using 'operant conditioning,' or teaching using a stimulus, a response[,] and a reinforcement." App. vol. 1, 23 (quoting App. vol. 2, 296). And Lizzie's parents argue that both the ALJ and the district court found that Lizzie required ABA-guided instruction. But contrary to the parent's position, neither the ALJ nor the district court found that the School District was required to deliver one-on-one ABA-guided instruction. Moreover, both the district court and the ALJ found that the IEP committed to one-on-one ABA-guided instruction "using other terms." App vol. 1, 35; App. vol. 5, 1124. For example, the ALJ found that although the IEP did not include the phrase "one-on-one," it nevertheless provided for "constant adult supervision . . . across all school settings." App. vol. 5, 1124. Similarly, although the IEP did not use the initialism "ABA," it specified that Lizzie would receive "consistent reinforcement, first/then strategies, visual prompts, and errorless teaching strategies." App. vol. 1, 124. And witnesses for the School District testified that these strategies are consistent with ABA principles.

Nevertheless, Lizzie's parents argue that the School District "intentionally refused to include [ABA-guided instruction] in her IEP so that they would not be

6

bound to provide it." Aplt. Br. 24. But Lizzie's parents do not point to any authority requiring the School District to specify a particular methodology in the IEP. Moreover, Lizzie's parents do not appear to dispute that the IEP's proposed strategies fall under the umbrella of ABA-guided instruction. Instead, they suggest that the School District's ABA strategies would be ineffective because the School District is applying "a simple strategy or handful of techniques," rather than "specialized training and continuous implementation with fidelity." *Id.* But even if we assume that the School District is not perfectly administering ABA, we do not evaluate whether the IEP perfectly adheres to a particular methodology. Rather, we ask whether the IEP is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S. Ct. 988, 998 (2017). Here, Lizzie's parents do not dispute the testimony from the School District explaining that the methods outlined in the IEP effectively addressed Lizzie's behaviors. Accordingly, although the IEP does not expressly require one-on-one ABA or perfectly adhere to ABA methodology, the IEP is nevertheless "reasonably calculated" to deliver Lizzie a FAPE. *Id.*

Last, Lizzie's parents argue that the IEP deprives Lizzie of a FAPE because it does not include extended-school-year (ESY) services. ESY services are special-education and related services provided to the student "[b]eyond the normal school year." 34 C.F.R. § 300.106(b). A school district must provide ESY services at no cost to the student's family only if it determines that the lack of such services will "jeopardize[]" the student's progress. *Johnson ex rel. Johnson v. Indep. Sch. Dist.*

7

*No. 4*, 921 F.2d 1022, 1028 (10th Cir. 1990) (per curiam). Here, the School District determined that Lizzie did not require ESY services. Lizzie's parents argue that there is an "abundance of evidence" undermining this determination; however, they fail to cite to any such evidence. Aplt. Br. 25. Instead, they contend that the School District's deliberations about ESY services were improper. Specifically, Lizzie's parents argue that the School District should not have considered the fact that they planned to enroll Lizzie at Alpine during the summer because, according to them, the School District was obligated to provide no-cost ESY services without regard for whether they planned to pay for ESY services on their own. But "the availability of alternative resources" is an appropriate consideration when determining whether to provide ESY services. *See Johnson*, 921 F.2d at 1027. Moreover, the School District is only required to provide no-cost ESY services if it determined that Lizzie needed them—and here, the School District determined that Lizzie did not. *See* § 300.106(a)(2). Thus, the School District's IEP does not violate the IDEA by not including ESY services.

In sum, we reject Lizzie's parents' arguments that the School District violated the IDEA. Accordingly, we need not consider whether the Alpine placement is proper. *See Thompson*, 540 F.3d at 1148 n.2 (declining to address proper-placement question because appellants failed to show public-school placement violated IDEA); *Florence*, 510 U.S. at 15. We therefore conclude that the School District's IEP

8

fulfilled its obligations under the IDEA by providing Lizzie with a FAPE.

Accordingly, we affirm the district court.

Entered for the Court


Nancy L. Moritz
Circuit Judge